IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| G., PARENT AND NEXT FRIEND OF K., A DISABLED CHILD, ET AL., <br><br> Plaintiffs, <br><br> vs. <br><br> STATE OF HAWAII, DEPARTMENT OF HUMAN SERVICES, ET AL., <br><br> Defendants. <br><br>———————————————— <br><br> G., PARENT AND NEXT FRIEND OF K., A DISABLED CHILD, ET AL., <br><br> Plaintiffs, <br><br> vs. <br><br> UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, ET AL., <br><br> Defendants. | Civ. No. 08-00551 ACK-BMK <br> Civ. No. 09-00044 ACK-BMK <br> (Consolidated) |

**ORDER DENYING PLAINTIFFS' MOTIONS FOR TEMPORARY RESTRAINING ORDERS AND TO EXPEDITE THE HEARING ON THEIR MOTIONS FOR PRELIMINARY INJUNCTIONS**

**FACTUAL BACKGROUND**[1/]

The Plaintiffs in this case are six aged, blind, and disabled ("ABD") beneficiaries under Hawaii's Medicaid program.

---

[1/] The facts in this Order are recited for the limited purpose of deciding the motions for temporary restraining orders and to expedite the hearing on the motions for preliminary injunctions. They are not intended to be findings of fact upon which the parties may rely in future proceedings.

They allege that Defendants, the State of Hawaii, Department of Human Services ("State DHS"), and Lillian B. Koller, in her official capacity as the Director of the State DHS (collectively, "State Defendants"), have violated certain provisions of Title XIX of the Social Security Act, commonly known as the Medicaid Act, 42 U.S.C. § 1396 <u>et seq.</u>, by requiring them to enroll with two healthcare entities as a condition of receiving Medicaid benefits in connection with the agency's managed care program for ABD beneficiaries, the QUEST Expanded Access ("QExA") Program. Those entities were the only ones awarded contracts to provide the care for ABD beneficiaries under the QExA Program ("QExA Contracts"). They are Intervenors Wellcare Health Insurance of Arizona, Inc. d/b/a Ohana Health Plan ("Ohana") and United Healthcare Insurance Company d/b/a Evercare ("Evercare") (collectively, "QExA Contractors").

        The QExA Program replaced the fee-for-service system that previously served the ABD population. The program was approved by the Centers for Medicare and Medicaid Assistance ("CMS"), a division of Defendant, the United States Department of Health and Human Services ("Federal DHHS"). Plaintiffs contend that the CMS acted arbitrarily and capriciously by granting a waiver of the "freedom of choice" provision, 42 U.S.C. § 1396a(a)(23), for the QExA Program pursuant to 42 U.S.C. § 1315(a) and by thereafter approving the QExA Contracts.

Although the mandatory enrollment period for the QExA Program started on February 1, 2009, the State DHS provided a six-month transition period during which healthcare providers who were not participating in the QExA Program could provide services to ABD beneficiaries without obtaining prior authorization from the QExA Contractors ("Transition Period"). The Transition Period had the practical effect of maintaining the fee-for-service system during the QExA Program's implementation. It ended on July 31, 2009. After the Transition Period, the QExA Contractors are not required to pay non-participating providers for services to ABD beneficiaries unless such providers first obtain prior authorization.

## PROCEDURAL HISTORY

On December 8, 2008, in Civil No. 08-00551 ACK-BMK, Plaintiffs filed a complaint against the State Defendants. On January 30, 2009, in Civil No. 09-00044 ACK-BMK, Plaintiffs filed a complaint against the Federal DHHS and Defendant, the Secretary of the Federal DHHS ("Secretary") (collectively, "Federal Defendants"). On February 4, 2009, Plaintiffs filed a first amended complaint against the Federal Defendants. On February 19, 2009, Civil Nos. 08-00551 and 09-00044 were consolidated. This is the third case brought in this Court challenging the QExA Program. See AlohaCare v. Hawaii, Dep't of Human Servs., 567 F. Supp. 2d 1238 (D. Haw. 2008), aff'd, No. 08-16589, 2009 U.S. App.

LEXIS 15463 (9th Cir. Jul. 14, 2009); Hawaii Coalition for Health v. Hawaii, Dep't of Human Servs., 576 F. Supp. 2d 1114 (D. Haw. 2008).

On May 11, 2009, the Court entered an order granting in part and denying in part a motion to dismiss filed by the State Defendants and joinders therein. See G. v. Hawaii, Dep't of Human Servs., Civ. Nos. 08-00551 ACK-BMK & 09-00044 ACK-BMK, 2009 U.S. Dist. LEXIS 39851 (D. Haw. May 11, 2009). The Court thereafter granted Plaintiffs leave to amend their complaints in certain respects. They therefore filed a first amended complaint against the State Defendants and a second amended complaint against the Federal Defendants.

On June 2, 2009, Plaintiffs filed a motion for a preliminary injunction against the Federal Defendants. On June 30, 2009, Plaintiffs filed a declaration by Arlene D. Meyers, M.D., and the Hawaii Coalition for Health ("HCH") ("Dr. Meyers' 1st Decl."). Dr. Meyers is the founding president of the HCH, a non-profit organization that advocates for healthcare consumers.

After the Transition Period came to a close on July 31, 2009, Plaintiffs filed two motions for temporary restraining orders in an effort to extend the fee-for-service system. On August 7, 2009, Plaintiffs filed a motion for a temporary restraining order against the Federal Defendants and to expedite the hearing on their motion for a preliminary injunction against

4

the Federal Defendants, accompanied by a memorandum in support ("Pls.' Fed. TRO Mem."). Plaintiffs also filed a second declaration by Dr. Meyers and the HCH ("Dr. Meyers' 2d Decl."). The Federal Defendants filed an opposition to the motion. The State Defendants filed an opposition to the motion, along with declarations by Dr. Kenneth Fink, M.D., the Administrator of the State DHS's Med-QUEST Division, and by David W. Heywood, the Hawai'i Executive Director for Evercare. The State Defendants additionally filed a joinder in the Federal Defendants' opposition. Evercare and Ohana filed joinders in the Federal and State Defendants' oppositions. Ohana also filed a declaration by its Executive Director, Erhardt Preitauer ("Mr. Preitauer's 1st Decl.").

On August 10, 2009, Plaintiffs filed a motion for a temporary restraining order against the State Defendants, for a preliminary injunction against the State Defendants, and to expedite the hearing on their motion for a preliminary injunction against the State Defendants, along with a memorandum in support and a third declaration by Dr. Meyers and the HCH. The State Defendants filed an opposition to the motion, accompanied by a declaration by Patricia M. Bazin, the State DHS's Long-term Care Assistance Program Officer and Health Care Services Branch Administrator. Ohana filed a joinder in the State Defendants' opposition and a second declaration by Mr. Preitauer. Evercare

5

filed a joinder in the State Defendants' opposition and a second declaration by Mr. Heywood ("Mr. Heywood's 2d Decl.").

On August 17, 2009, Plaintiffs filed an ex parte motion for leave to file a reply in support of their motion for a temporary restraining order against the Federal Defendants, a fourth declaration by Dr. Meyers and the HCH, and a declaration by Tina McGill and Hawaii Orthotics Prosthetics Enterprises. The Court granted the motion the same day.

On August 18, 2009, Plaintiffs filed a reply in support of their motion for a temporary restraining order against the Federal Defendants, accompanied by a fourth declaration by Dr. Meyers and HCH and a declaration by Ms. McGill and Hawaii Orthotics Prosthetics Enterprises. That day, the Court held a hearing on Plaintiffs' motions for temporary restraining orders and to expedite the hearing on their motions for preliminary injunctions. At the hearing, the Court granted Evercare leave to file a third declaration by Mr. Heywood in response to Ms. McGill's declaration. Evercare thereafter filed a third declaration by Mr. Heywood.

## LEGAL STANDARD

"The standards for granting a temporary restraining order and a preliminary injunction are identical." Hawaii v. Gannett Pac. Corp., 99 F. Supp. 2d 1241, 1247 (D. Haw. 1999); cf. Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832,

6

839 n.7 (9th Cir. 2001) (observing that an analysis of a preliminary injunction is "substantially identical" to an analysis of a temporary restraining order).  "'A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'"  Am. Trucking Ass'ns v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting Winter v. Natural Res. Def. Council, Inc., 129 S. Ct. 365, 374 (2008)) (explaining that, "[t]o the extent that [the Ninth Circuit's] cases have suggested a lesser standard, they are no longer controlling, or even viable" (footnote omitted)); see also Stormans, Inc. v. Selecky, 571 F.3d 960, 978 (9th Cir. 2009) (noting that this is the "proper legal standard for preliminary injunctive relief"); Winter, 129 S. Ct. at 374–76 (holding that, even where a likelihood of success on the merits is established, a mere "possibility" of irreparable injury is insufficient to warrant preliminary injunctive relief, because "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the Supreme Court's] characterization of injunctive relief as an extraordinary remedy that may only be

awarded upon a clear showing that the plaintiff is entitled to such relief").[2]

## DISCUSSION

In the motion for a temporary restraining order against the Federal Defendants, Plaintiffs request an order restraining the CMS's continuing 42 U.S.C. § 1315(a) waiver of their "freedom of choice" rights, 42 U.S.C. § 1396a(a)(23), which would serve to reinstate their right to "choose among a range of qualified providers[] without government interference." See O'Bannon v. Town Court Nursing Ctr., 447 U.S. 773, 785 (1980). In other words, but-for the waiver, they would be entitled to obtain services from healthcare providers who are not participating in the QExA Program's network. In the motion for a temporary restraining order against the State Defendants, Plaintiffs ask the Court to reinstate the Transition Period pending its ruling

---

[2] The Court notes that there is an unpublished Ninth Circuit case where the panel did apply the "serious questions" component of the alternative "sliding scale" standard based on a reference to Justice Ginsburg's dissenting opinion in Winter. Greater Yellowstone Coalition v. Timchak, No. 08-36018, 2009 U.S. App. LEXIS 7820, at *4–*5 & n.1 (9th Cir. Apr. 10, 2009) (unpublished opinion) (concluding that, although the district court did not abuse its discretion in finding that the plaintiffs were not likely to succeed on the merits, the plaintiffs had raised very "'serious questions'" going to the merits (quoting Save Our Sonoran, Inc. v. Flowers, 408 F.3d 1113, 1121 (9th Cir. 2005))). However, that standard would appear to be contrary to one that Ninth Circuit articulated in its published opinion in American Trucking, 559 F.3d at 1052, which was issued before Greater Yellowstone Coalition, and its published opinion in Stormans, 571 F.3d at 978, which was handed down after.

on their motion for a preliminary injunction against the State Defendants.

Plaintiffs contend that they will likely suffer irreparable injury unless the Court reinstates the Transition Period or restrains the continuing 42 U.S.C. § 1315(a) waiver of the "freedom of choice" provision, which would have the practical effect of reinstating the Transition Period.  They claim that they have not been assigned primary care physicians who are participating in the QExA Program and that they will likely therefore be denied access to medical care in the absence of injunctive relief.  See Pls.' Fed. TRO Mem. 5 & n.4.

Dr. Meyers testifies that she is the primary care physician for five of the six Plaintiffs and that a physician practicing in her office is the primary care physician for the sixth Plaintiff.  Dr. Meyers' 1st Decl. ¶¶ 26, 34, 36.  Dr. Meyers and her associate diagnose and treat Plaintiffs' basic health problems and refer them to specialists and institutions when their problems require such care.  Dr. Meyers' 2d Decl. ¶¶ 36, 51.  The doctors locate and work with such specialists and institutions to ensure that Plaintiffs' care is properly coordinated to guard against inconsistent or unneeded treatment as well as to ensure that, if needed, further treatment is provided.  Id. ¶ 36.

Neither Dr. Meyers nor her associate is a participating provider with the QExA Contractors.  Dr. Meyers' 1st Decl. ¶¶ 25, 34.  During the Transition Period, Plaintiffs' primary care physicians could provide them with services without obtaining prior approval from the QExA Contractors.  Id. ¶ 4; Dr. Meyers' 2d Decl. ¶¶ 2, 4.2.  However, after the Transition Period, the QExA Contractors are not required to pay for such services unless the physicians obtain prior authorization.  Dr. Meyers' 2d Decl. ¶ 4.4.  Dr. Meyers indicates that she and her associate have remained Plaintiffs' primary care physicians because none of the Plaintiffs has succeeded in finding an "alternate suitable [primary care physician] through either of the [QExA Contractors]."  See Dr. Meyers' 1st Decl. ¶ 51.  She indicates that obtaining prior authorization from the QExA Contractors is onerous and that she has experienced problems securing such authorization in the past.  See, e.g., Dr. Meyers' 2d Decl. ¶¶ 24.5, 28.  But see id. ¶¶ 4.5–4.6 (explaining that Dr. Meyers and her staff had recently obtained prior authorization from Evercare in twenty minutes).  It is on this basis that Plaintiffs ask the Court to order the reinstatement of the Transition Period.

      Ohana has decided to reinstate the Transition Period for healthcare providers who have signed a contract to be a participating provider, but who have not yet completed the

"credentialing" process by providing documentation regarding their ability to render services.  Mr. Preitauer's 1st Decl. ¶¶ 12, 19.  These providers do not have to obtain prior approval from Ohana before providing healthcare services to ABD beneficiaries.  Id.  Ohana's new "transition period" started on August 10, 2009, and is scheduled to end sixty days later on October 9, 2009.  Id.  Although Dr. Meyers has testified that she does not intend to participate in Ohana's plan, she has signed a contract with Ohana without thereafter completing the credentialing process.  Id. ¶ 11, Ex. 2 (signed contract).  As such, she can provide services to her ABD patients who are enrolled with Ohana without prior approval.  Id. ¶¶ 19, 21. Those Plaintiffs who are enrolled in Ohana may thus obtain treatment from Dr. Meyers without prior authorization.  See Dr. Meyers' 2d Decl. ¶¶ 8, 12 (indicating that seventeen of Dr. Meyers' twenty ABD patients are enrolled with Ohana).  Ohana represents that, during the sixty-day transition period, it will work closely with Dr. Meyers and her patients to transition Plaintiffs' care to participating providers.  Mr. Preitauer's 1st Decl. ¶ 21.

At least one of the Plaintiffs who is Dr. Meyers' patient is enrolled with Evercare.  Dr. Meyers' 1st Decl. ¶ 46. In addition, Plaintiffs' counsel represented at the hearing that the Plaintiff who is a patient of Dr. Meyers' associate is also

enrolled with Evercare.  8/18/09 Transcript of Proceedings ("Tr.") 13:20-14:9.[3/]  While Evercare generally requires prior approval after the Transition Period, its Hawai'i Executive Director, Mr. Heywood, has stated that, if an Evercare member has identified a non-participating provider as his or her primary care physician, until such time as Evercare is able to transition that member to a new primary care physician, Evercare will treat the physician identified by the member as the patient's current primary care physician and as a participating provider.  Mr. Heywood's 2d Decl. ¶ 52.  No prior authorization will be required for the physician to see the Evercare member until the transition is made, as long as the member has informed Evercare of the existing relationship.  Id.  Thus, a Plaintiff who is enrolled in Evercare, who does not have a participating primary care physician, and who is a patient of Dr. Meyers or her associate may obtain treatment from Dr. Meyers or her associate without prior authorization so long as Evercare is informed that Dr. Meyers or her associate is the Plaintiff's primary care physician.

At the hearing, counsel for Evercare and Ohana agreed to extend the Transition Period as to each Plaintiff until the Court rules on the motions for preliminary injunctions, unless

---

[3/] The record citations herein are to the rough draft of the transcript of proceedings because the final transcript is not yet available.

the Plaintiff has expressed an intent to be seen by a different primary care physician or has been assigned to and accepted by a participating primary care physician.  8/18/09 Tr. 17:23-18:1, 19:13-20, 20:7-24, 21:24-22:5.  They also agreed that, if a Plaintiff continues to receive treatment from Dr. Meyers or her associate, the doctor will be allowed as a non-participating provider to refer the Plaintiff to a specialist, to order tests, to prescribe medications, to see the Plaintiff for follow-up appointments, and to admit the Plaintiff to a hospital.  Id. at 18:1-6, 20:21-24, 21:24-22:5.

The Court finds that Plaintiffs have not shown that they will likely suffer irreparable harm in the absence of an extension of the Transition Period or an order restraining the 42 U.S.C. § 1315(a) waiver, as the Transition Period has effectively been extended by the QExA Contractors.  Indeed, Plaintiffs' counsel made a concession to that effect at the hearing.  8/18/09 Tr. 11:9-24.  Because Plaintiffs have failed to establish a likelihood of irreparable harm, which is an essential element for preliminary injunctive relief, the Court need not consider their likelihood of success on the merits, the balance of equities, or the public interest.  See Am. Trucking, 559 F.3d at 1052; Germon v. Times Mirror Co., 520 F.2d 786, 788 (9th Cir. 1975) (declining to consider the plaintiff's likelihood of irreparable harm because it had failed to show a likelihood of success on the

merits, as a "party seeking preliminary relief must show a likelihood of success on the merits and that he will suffer irreparable injury if the relief is denied" (emphasis in original)). The Court will deny their motions for temporary restraining orders against the State and Federal Defendants accordingly. In addition, having found that the Transition Period has basically been extended, the Court will deny Plaintiffs' motions to expedite the hearing on their motions for preliminary injunctions against the State and Federal Defendants.

      Lastly, the Court notes that the Federal Defendants have yet to file the complete administrative record regarding the CMS's decisions to grant the 42 U.S.C. § 1315(a) waiver and to approve the QExA Contracts. The hearing on Plaintiffs' motion for a preliminary injunction against the Federal Defendants is currently set for October 19, 2009. Plaintiffs have asked the Federal Defendants for administrative records starting from 2004. 8/18/09 Tr. 26:1-3. In order to ensure that Plaintiffs have sufficient time to review the administrative record before their reply brief is due, the Court will order the Federal Defendants to file the portions of the administrative record that were created during or after 2004 by September 8, 2009.

**CONCLUSION**

In accordance with the foregoing, the Court:

(1) DENIES Plaintiffs' motions for temporary restraining orders against the State and Federal Defendants, because Plaintiffs have not shown a likelihood of irreparable harm in the absence of a temporary restraining order, as the Transition Period has effectively been extended by the QExA Contractors;

(2) having found that the Transition Period has effectively been extended, DENIES Plaintiffs' motions to expedite the hearing on their motions for preliminary injunctions against the State and Federal Defendants; and

(3) ORDERS the Federal Defendants to file the portions of the administrative record that were created during or after 2004 by September 8, 2009.

IT IS SO ORDERED.

Dated:  Honolulu, Hawai'i, August 20, 2009.

_____
Alan C. Kay
Sr. United States District Judge

G. v. Hawai'i, Dep't of Human Servs., Civ. Nos. 08-00551 ACK-BMK & 09-00044 ACK-BMK:  Order Denying Plaintiffs' Motions for Temporary Restraining Orders and to Expedite the Hearing on their Motions for Preliminary Injunctions