IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| G., PARENT AND NEXT FRIEND OF K., A DISABLED CHILD, ET AL.,<br><br>    Plaintiffs,<br><br>  vs.<br><br>STATE OF HAWAII, DEPARTMENT OF HUMAN SERVICES, ET AL.,<br><br>    Defendants.<br><br>G., PARENT AND NEXT FRIEND OF K., A DISABLED CHILD, ET AL.,<br><br>    Plaintiffs,<br><br>  vs.<br><br>UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, ET AL.,<br><br>    Defendants. | Civ. No. 08-00551 ACK-BMK<br>Civ. No. 09-00044 ACK-BMK<br>(Consolidated) |

**ORDER SUBMITTING A CERTIFIED QUESTION OF STATE LAW TO THE HAWAIʻI SUPREME COURT FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF HAWAII**

      On September 22, 2009, the Court granted a request to certify a question of law to the Hawaiʻi Supreme Court. Pursuant to Rule 13 of the Hawaiʻi Rules of Appellate Procedure, the Court

respectfully asks the Hawai'i Supreme Court to exercise its discretion to accept and decide the certified question below.[1]

### **STATEMENT OF FACTS**[2]

The Plaintiffs in this case are comprised in part by aged, blind, and disabled ("ABD") beneficiaries[3] under Hawaii's Medicaid program.[4] They allege that Defendants the State of Hawaii, Department of Human Services ("State DHS"), and Lillian B. Koller, in her official capacity as the Director of the State DHS (collectively, "State Defendants"), have violated certain provisions of Title XIX of the Social Security Act, commonly known as the Medicaid Act, 42 U.S.C. § 1396 et seq., by requiring them to enroll with two healthcare entities as a condition of receiving Medicaid benefits in connection with the agency's managed care program for ABD beneficiaries, the QUEST Expanded

---

[1] Much of the language and structure of this Order are taken directly from the Ninth Circuit's decision certifying a question to the Hawai'i Supreme Court in Apana v. TIG Ins. Co., 574 F.3d 679 (9th Cir. 2009).

[2] The facts in this Order are recited for the limited purpose of certifying a question of state law to the Hawai'i Supreme Court and shall not be construed as findings of fact upon which the parties may rely in future proceedings in this case.

[3] The remaining Plaintiffs in this case are healthcare providers. The claims that are specific to them are not pertinent to the certified question and are thus not discussed in this Order.

[4] For further background on the Medicaid Act in general and Hawaii's Medicaid program in particular, see G. v. Hawaii, Dep't of Human Servs., Civ. Nos. 08-00551 ACK-BMK & 09-00044 ACK-BMK, 2009 U.S. Dist. LEXIS 39851, at *5-*18 (D. Haw. May 11, 2009).

Access ("QExA") Program. Those entities were the only ones awarded contracts to provide the care for ABD beneficiaries under the QExA Program ("QExA Contracts"). They are Intervenors Wellcare Health Insurance of Arizona, Inc. d/b/a Ohana Health Plan ("Ohana") and United Healthcare Insurance Company d/b/a Evercare ("Evercare") (collectively, "QExA Contractors"). On February 1, 2009, the QExA Program replaced the fee-for-service system that served the ABD population.

## PRIOR PROCEEDINGS

On December 8, 2008, in Civil No. 08-00551 ACK-BMK, Plaintiffs filed a complaint against the State Defendants.[5] This is the third case filed in this Court challenging the QExA Program. See AlohaCare v. Hawaii, Dep't of Human Servs., 567 F. Supp. 2d 1238 (D. Haw. 2008), aff'd, 572 F.3d 740 (9th Cir. 2009); Hawaii Coalition for Health v. Hawaii, Dep't of Human Servs., 576 F. Supp. 2d 1114 (D. Haw. 2008).

On May 11, 2009, the Court entered an order granting in part and denying in part a motion to dismiss filed by the State

---

[5] Plaintiffs have also brought an action against Defendants the United States Department of Health and Human Services ("Federal DHHS") and the Secretary of the Federal DHHS (collectively, "Federal Defendants") based on the role that the Centers for Medicare and Medicaid Services ("CMS"), a division of the Federal DHHS, played in certain aspects of the QExA Program. The claims against the Federal Defendants are essentially irrelevant to the certified question. However, the Court notes that Plaintiffs have claimed that the CMS acted arbitrarily and capriciously by failing to determine whether the QExA Contractors met solvency standards before approving the QExA Contracts.

Defendants and joinders therein. See G. v. Hawaii, Dep't of Human Servs., Civ. Nos. 08-00551 ACK-BMK & 09-00044 ACK-BMK, 2009 U.S. Dist. LEXIS 39851 (D. Haw. May 11, 2009). The Court thereafter granted Plaintiffs leave to amend the complaint in certain respects. They therefore filed a first amended complaint against the State Defendants.

On August 10, 2009, Plaintiffs filed a motion for a temporary restraining order against the State Defendants, for a preliminary injunction against the State Defendants, and to expedite the hearing on their motion for a preliminary injunction against the State Defendants. The Court thereafter entered an order denying Plaintiffs' motion for a temporary restraining order. G. v. Hawaii, Dep't of Human Servs., Civ. Nos. 08-00551 ACK-BMK & 09-00044 ACK-BMK, 2009 U.S. Dist. LEXIS 80841 (D. Haw. Sept. 4, 2009). Plaintiffs subsequently withdrew their motion for a preliminary injunction.

On August 31, 2009, with leave of Court, Plaintiffs filed a second amended complaint against the State Defendants.

On September 14, 2009, the State Defendants filed a motion for a stay in order to certify a question of law to the Hawai'i Supreme Court. The Court agreed to certify a question to the Hawai'i Supreme Court and granted a stay with respect to the certified question, which, as discussed below, concerns the issue of the QExA Contractors' solvency, but denied a stay as to any

4

other issue.  G. v. Hawaii, Dep't of Human Servs., Civ. Nos. 08-00551 ACK-BMK & 09-00044 ACK-BMK, 2009 U.S. Dist. LEXIS 86963 (D. Haw. Sept. 22, 2009).  On September 29, 2009, the parties submitted proposed certified questions.

## **LEGAL CIRCUMSTANCES**

Plaintiffs contend, among other things, that the QExA Contractors have failed to meet certain solvency standards, as contemplated by 42 U.S.C. § 1396b(m)(1)(A)(ii).  Based on that alleged deficiency, Plaintiffs essentially ask that the Court order the State Defendants to reinstate the fee-for-service system.

42 U.S.C. § 1396b(m)(1)(A)(ii) defines a managed care organization ("MCO") as an organization that

> has made adequate provision against the risk of insolvency, which provision is satisfactory to the State, meets the requirements of [42 U.S.C. § 1396b(m)(1)](C)(i) (if applicable), and which assures that individuals eligible for benefits under this title are in no case held liable for debts of the organization in case of the organization's insolvency.

Under 42 U.S.C. § 1396b(m)(1)(C)(i), "a provision meets the requirements of this subparagraph for an organization if the organization meets solvency standards established by the State for private health maintenance organizations or is licensed or certified by the State as a risk-bearing entity."  See also 42 C.F.R. § 438.116(b) ("[A]n MCO . . . must meet the solvency

standards established by the State for private health maintenance organizations, or be licensed or certified by the State as a risk-bearing entity.").

Throughout this case, the State Defendants have not claimed that the QExA Contractors meet Hawaii's solvency requirements for private health maintenance organizations, which are set forth in Hawai'i Revised Statutes ("HRS") § 432D-8. Thus, the question narrows to whether the QExA Contractors are "licensed or certified by the State as a risk-bearing entity," such that they may perform the services required under the QExA Contracts. See 42 U.S.C. § 1396b(m)(1)(C)(i). The answer to this question turns on the interpretation of state insurance law, particularly HRS chs. 431:10A, which governs accident and health insurers, and 432D, which governs health maintenance organizations. Plaintiffs contend that the QExA Contractors must have health maintenance organization licenses in order to perform under the QExA Contracts. In view of the following analysis, the Court finds that there is room for a difference of opinion on the matter.

In a recent administrative decision, which is presently on appeal before the First Circuit Court of the State of Hawai'i, the Insurance Commissioner of the State of Hawai'i addressed the question of whether the QExA Contractors are properly licensed to perform the services required under the QExA Contracts. In re

AlohaCare, No. IC-08-142, Insurance Commissioner's Decision, Findings of Fact, Conclusions of Law and Order ("IC's Decision") at 2 (Jun. 2, 2009). The Insurance Commissioner found that the QExA Contracts contemplate a "closed panel" plan, "meaning that care must be obtained from the contracted network of providers if it is available within the network." Id. at 4. He specifically noted that, under the request for proposals that ultimately culminated in the QExA Contracts, "[i]f a health plan's network is unable to provide medically necessary covered services to a particular member within its network or on the island of residence, the health plan shall adequately and timely provide these services out-of-network or transport the member to another island to access the service(s) for as long as it is unable to provide them on the island of residence." Id. at 6. He further found that the QExA Contractors are licenced as accident and health insurers under HRS ch. 431:10A and that they are accordingly "licensed as risk-bearing entities by the State of Hawaii." Id. at 4. However, neither is licensed pursuant to HRS ch. 432D, the Health Maintenance Organization ("HMO") Act, which generally governs "closed panel" plans. Id. at 8.

> The Insurance Commissioner explained that:
>
> There is substantial overlap between the powers granted to health maintenance organizations under HRS Chapter 432D and entities licensed under HRS Chapter 431:10A. The key distinction is that HMOs are the only licensed entities that may furnish health

>           care directly to their members through
>           facilities that it owns or operates and
>           utilizing the services of physicians employed
>           by the HMO and require that coverage is only
>           provided when a member either utilizes its
>           facilities and providers or is specifically
>           authorized by its providers to utilize
>           outside facilities or providers.  An entity
>           licensed as an HMO is not limited to
>           furnishing care directly to its members
>           through its owned facilities and employed
>           providers, but it is authorized to do so.
>           That authorization distinguishes entities
>           licensed as HMOs from other risk-bearing
>           entities licensed by the Insurance
>           Commissioner in the State of Hawaii.
>           Conversely, risk bearing entities licensed
>           under HRS Chapter 431:10A are prohibited from
>           requiring that "service[s] be rendered by a
>           particular hospital or person."

Id. at 9 (quoting HRS § 431:10A-205(b)).

The Insurance Commissioner observed that HRS § 431:10A-205(b)'s provision against requiring that "service[s] be rendered by a particular hospital or person" only prohibits "a restriction that limits insureds to receiving care from 'a particular,' or a single, designated hospital or person." Id. at 10.  He thus concluded that "[i]nsurers licensed pursuant to HRS Chapter 431:10A are not prohibited from offering a closed panel or limited physician group model of care by HRS § 431:10A-205(b) as long as there is a choice of providers and hospitals for its members." Id.  He also noted that "[t]here is nothing in the legislative history of HRS § 431:10A-205(b) to support an interpretation of the provision as precluding the offering of a closed panel product such as that required by the QExA program."

8

<u>Id.</u> He further observed that the provision "has remained virtually unchanged since it was enacted in 1955, while Hawaii was still a territory." <u>Id.</u> Moreover, the Insurance Commissioner asserted that "[t]he statutory language cannot have been intended to prohibit closed panel or limited physician group models of care, as those managed care models have only developed in recent times." <u>Id.</u> at 11. Additionally, he observed that, "if the Legislature had intended to prohibit insurers from requiring that services be obtained from a defined network of providers, the statutory language would have used the plural form instead of the singular ('particular hospitals or persons')." <u>Id.</u> For these reasons, the Insurance Commissioner determined that the QExA Contractors were not required to have HMO licenses in order to perform under the QExA Contracts and that their health and accident insurance licenses were sufficient. <u>Id.</u>

In light of the Insurance Commissioner's discussion, the key provision for present purposes would appear to be HRS § 431:10A-205(b), which states in relevant part that:

> Any group or blanket disability policy may provide that all or any portion of any indemnities provided by the policy on account of hospital, nursing, medical, or surgical services may, at the insurer's option, be paid directly to the hospital or person rendering such services, but the policy may not require that the service be rendered by a particular hospital or person.

9

HRS § 431:10A-205(b); see also id. § 431:10A-105(9)(B)(ii). The Insurance Commissioner interpreted this provision literally: The statute prohibits a risk-bearing entity licensed as an accident and health insurer from requiring that medical services be rendered by "a particular hospital or person." See AlohaCare, IC's Decision at 10-11. He noted that, "if the Legislature had intended to prohibit [accident and health] insurers from requiring that services be obtained from a defined network of providers, the statutory language would have used the plural form instead of the singular ('particular hospitals or persons')." Id. at 11.

On the other hand, one might argue that the statute's use of singular language is not determinative. "The use of words in a statute signifying the singular is . . . not conclusive." Nobriga v. Raybestos-Manhattan, Inc., 67 Haw. 157, 163, 683 P.2d 389, 394 (1984). HRS § 1-17 sets forth the general rule of statutory construction that "[w]ords . . . in the singular or plural number signify both the singular and plural number." This provision may suggest that HRS § 431:10A-205(b) would not simply prohibit an accident and health insurer from requiring that services be rendered by "a particular hospital or person," but also by "particular hospitals or persons." See Wong v. Hawaiian Scenic Tours, Ltd., 64 Haw. 401, 406, 642 P.2d 930, 933 (1982) (per curiam) (construing, pursuant to HRS § 1-17, the term

"person" to mean "persons" in a comparative negligence statute, HRS § 663-31).  In view of the Insurance Commissioner's discussion of the purpose and history of HRS § 431:10A-205(b), it is unclear whether HRS § 1-17 is appropriately applied to HRS § 431:10A-205(b).  See AlohaCare, IC's Decision at 10-11; cf. HRS § 1-12 ("All provisions of the Hawaii Revised Statutes relating to general statutory construction shall apply not merely to laws now in force but to all hereafter enacted, unless otherwise expressed or obviously intended."); Nobriga, 67 Haw. at 164, 683 P.2d at 394 (considering the purpose of a statute and whether the legislature intended to create disparate results in determining the applicability of HRS § 1-17).

In the event that HRS § 431:10A-205(b) is found to be properly read together with HRS § 1-17, one might conclude that a risk-bearing entity licensed as an accident and health insurer may not require that medical services be rendered by particular hospitals or persons.  If that turns out to be the case, it would appear that the QExA Contractors, which only have accident and health insurance licenses, are not licensed or certified by the State DHS as risk-bearing entities that can perform the services required under the QExA Contracts, in contravention of 42 U.S.C. § 1396b(m)(1)(C)(i).  The proper analysis of HRS § 431:10A-205(b) is thus potentially determinative of Plaintiffs' solvency claim under 42 U.S.C. § 1396b(m)(1)(C)(i).

**CERTIFIED QUESTION**

In light of the foregoing, the Court respectfully certifies the following question to the Hawaiʻi Supreme Court:

> Whether the QExA Contractors, who have accident and health insurance licenses under HRS ch. 431:10A, but who do not have health maintenance organization licenses under HRS ch. 432D, may perform under the QExA Contracts, which utilize "closed panel" plans.[6/]

The Court does not intend the form of this question to limit the Hawaiʻi Supreme Court's consideration of the issues relevant to disposing of this matter. If the Hawaiʻi Supreme Court decides to consider the certified question, it may reformulate the issue in light of the parties' contentions or other relevant considerations.

---

[6/] This is the question that the Court proposed in its order granting in part and denying in part the State Defendants' motion for a stay. In preparing the certified question, the Court reviewed the proposed questions that the parties submitted. Plaintiffs' proposed question focused on "capitated" plans, as opposed to "closed panel" plans. "Capitated basis" is defined as "fixed per member per month payment or percentage of premium payment wherein the provider assumes the full risk for the cost of contracted services without regard to the type, value, or frequency of services provided." HRS § 432D-1. The Court finds that "closed panel" is the more appropriate term to use in framing the question because it focuses on the limitation set forth in HRS § 431:10A-205(b), which is the key provision at issue. The term "capitated" does not appear to directly address that limitation. The State Defendants' proposed question was very general and did not mention the relevant statutes in this case. Finally, the QExA Contractors did not submit questions of their own, but instead noted that they preferred the Court's proposed question over the questions submitted by the State Defendants and Plaintiffs.

## **CONCLUSION**

The Clerk of this Court is hereby ordered to transmit a copy of this Order to the Hawai'i Supreme Court under the official seal of the United States District Court for the District of Hawaii.  See Haw. R. App. P. 13(c).  In addition, the Clerk is ordered to provide "original or copies of all or any portion of the record" in this case as "[t]he Hawai'i Supreme Court may, in its discretion, require."  Id.

The parties shall notify this Court within one week after the Hawai'i Supreme Court accepts or rejects certification.  If the Hawai'i Supreme Court accepts the certified question, the parties shall file a joint status report to this Court every six months after the date of acceptance, or more frequently if circumstances warrant.

IT IS SO ORDERED.

Dated:  Honolulu, Hawai'i, October 2, 2009.



_____
Alan C. Kay
Sr. United States District Judge

G. v. Hawai'i, Dep't of Human Servs., Civ. Nos. 08-00551 ACK-BMK & 09-00044 ACK-BMK:  Order Submitting a Certified Question of State Law to the Hawai'i Supreme Court from the United States District Court for the District of Hawaii