Rafael G. del Castillo          6909-0
rafa@hawaii.rr.com
Jouxson-Meyers & del Castillo
A Limited Liability Law Company
302 California Avenue, Suite 209
Wahiawa, Hawaii 96786
Telephone:  808-621-8806; Facsimile:  808-422-8772

Bruce F. Sherman          5996-0
Attorney at Law
1164 Bishop Street, Ste 124
Honolulu, Hawai'196813
Telephone: (808) 221-0901
bfs@bfshermanlaw.com

Attorneys for Plaintiffs

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| G., parent and next friend of K., a disabled minor child, et al.,<br><br>    Plaintiffs,<br>vs.<br><br>State of Hawaii, et al.<br><br>              Defendants.<br>_____<br>G., parent and next friend of K., a disabled minor child, et al.,<br><br>    Plaintiffs,<br>vs.<br><br>United States Department of Health and Human Services, et al. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

CIVIL NO. 08-00551 ACK/BMK
CIVIL NO. 09-00044 ACK/BMK
Consolidated Cases (Civil Rights)

PLAINTIFFS' REPLY TO INTERVENOR WELLCARE/OHANA'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS IN THE FORM IN WHICH IS ORDINARILY MAINTAINED OR IN A REASONABLY USABLE FORM [Doc 317]

HEARING:
Time:       2:00 p.m.
Date:       October 27, 2009
Judge:      Hon. Barry M. Kurren
Trial Date: March 16, 2010

Defendants.              )
_____  )

**PLAINTIFFS' REPLY TO INTERVENOR WELLCARE/OHANA'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL RESPONSES TO RE-QUESTS FOR PRODUCTION OF DOCUMENTS IN THE FORM IN WHICH IS ORDINARILY MAINTAINED OR IN A REASONABLY USABLE FORM**

Intervenor Wellcare/Ohana failed in their Opposition, Docket No. 317 ("Doc. 317") to address the issues before the Court on Plaintiffs' Motion to Compel, and instead attempts to persuade the Court to decide that producing ESI is too costly without providing the Court any factual basis on which to decide whether there is a cost involved and whether it is too much.

Notably, Wellcare/Ohana offers no excuse for its refusal to confer with Plaintiffs about ESI and the form of production prior October 2, nor any excuse for failing to produce anything at all in response to Plaintiffs' May 4 request. Moreover, having persuaded the Court to issue the protective order to which it subscribed, Wellcare/Ohana now unaccountably asks the Court to permit it to avoid its discovery obligations arguing that the protective order will not protect it.  None of the foregoing contentions have any merit.

I.    <u>ARGUMENT</u>

Intervenor Wellcare/Ohana has yet to comply with its obligation to produce documents pursuant to the Plaintiffs' Request for Production of Documents dated May 4, 2009. It is difficult to determine exactly what Intervenor Wellcare/Ohana's

2

position is, since it appears to assert that either it has no documents to produce or in the alternative, that the State Defendants will make production on its behalf. Since Intervenor Wellcare/Ohana's response to Plaintiffs' Second Request for Production is due on October 29, 2009, the question of the format of ESI is still relevant and pressing. The issues relating to discovery and ESI should have been addressed six (6) months ago, but Intervenor Wellcare/Ohana refused to discuss or address any of the Fed.R.Civ.P 16 and 26 questions with the Plaintiffs at that time. Plaintiffs first learned of Intervenor Wellcare/Ohana's new position that it approved of producing ESI as PDFs made searchable through OCR (these searchable PDFs will be also be referred as "OCR'd PDFs").

While the Intervenor Wellcare/Ohana's Opposition memorandum, Doc 317, reads as if the State Defendants had already delivered all of Wellcare/Ohana's required production, the State Defendants did not begin to deliver the first part of the paper copies of the above-described documents until October 8, 2009-**two (2) days after the Plaintiffs filed this motion**. The Plaintiffs have yet to see or receive the "searchable pdf [sic] files" described by the State Defendants and Intervenors in their opposition memorandums.  **Prior to the filing of Plaintiffs' Motion to Compel, Intervenor Wellcare/Ohana refused to produce the documents <u>in any format,</u> and made it clear any production would be made on paper or possibly as static images on a CD.**

3

The attempts made by the Plaintiffs to reach some kind of agreement regarding electronically stored information ("ESI") with Intervenor Wellcare/Ohana are full described in their Memorandum in Support (doc#286-2) at pp 2-8. Intervenor Wellcare/Ohana cannot reasonably contest that description with any credulity. The Plaintiffs unequivocally requested the ESI in its native format or a reasonably usable form, well before any production (none to date) by Intervenor Wellcare/Ohana had occurred.

A)   <u>THE PRODUCTION OF ESI IN THE IMAGE PDF FORMAT WILL PREVENT THE PLAINTIFFS FROM EFFICIENTLY USING THE INFORMATION IN LITIGATION</u>

The Advisory Committee notes to the 2006 Amendments to Rule 34 state in pertinent part:

> [T]he option to produce in a reasonably usable form does not mean that a responding party is free to convert electronically stored information from the form in which it is ordinarily maintained to a different form that makes it more difficult or burdensome for the requesting party to use the information efficiently in the litigation. **If the responding party ordinarily maintains the information it is producing in a way that makes it searchable by electronic means, the information should not be produced in a form that removes or significantly degrades this feature**. [emphasis added]

The court in *Bray & Gillespie Management LLC v Lexington Insurance Company,* __F.R.D.__, 2009 WL 546429 (M.D.FL March 4, 2009) dealt with a situation where the Plaintiff sought to produce ESI as a TIFF format with metatdata removed. The court, id at 18, stated:

4

B & G kept e-mail and other ESI in computer files that were full text
searchable with associated metadata. The ESI B & G produced as
TIFF images without metadata eliminated the search capabilities that
would have been available if B & G had produced ESI in native for-
mat. To conduct searches, Lexington would have had to convert the
TIFF images into a searchable text format through OCR. *See* Doc.
No. 222 at 11. Because of the significant limitations of OCR dis-
cussed above, the ability to search would only have been as good as
the ability of the OCR software to translate what appeared in the
TIFF images. OCR also would not identify metadata that did not ap-
pear in the TIFF images, such as dates of creation and modification
of ESI. Thus, I find the form of production selected by B & G re-
moved or significantly degraded Lexington's ability to search the ESI
and, accordingly, that it was not in a reasonably usable form as re-
quired by <u>Rule 34</u>.

*Bray & Gilespie Management LLC*, supra at 19-20, with respect to the ar-

gument that Intervenor Wellcare/Ohana is substantially justified in not producing

ESI with associated metadata, specifically distinguishes the following cases relied

upon for that proposition by Intervenor Wellcare/Ohana: *Kentucky Speedway, LLC*

*v. NASCAR, Inc.*, 2006 WL 5097354 (E.D.Ky. Dec.18, 2006); *Michigan First Cre-*

*dit Union v. Cumis Ins. Soc'y, Inc.*, No. 05-74423, 2007 WL 4098213 (E.D.Mich.

Nov.16, 2007); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Li-*

*tig. ("In re Payment Card" )*, No. MD 05-1720(JG) (JO), 2007 WL 121426

(E.D.N.Y. Jan. 12, 2007)

Intervenor Wellcare/Ohana makes much of the fact that the production to date

(including the AR prepared by the federal defendants and the future production

promised by the State Defendants) is "only" approximately 10,000 pages. There is

nothing in the Fed.R.Civ.P 26 or 34 that creates a threshold number of documents or pages, which, if the projected number of discovery documents falls below it, mandates production of documents in paper or static image format.[1]  Intervenor Wellcare/Ohana, while chastising the plaintiffs for insisting upon the production of ES I in its native format or a reasonably usable form, seems to forget that it has had since May 4, 2009 in which to review and to deliver discovery documents to the plaintiffs.

The production of ESI in its native format will permit the plaintiff's to save time, energy, and expense. It will make for a much more efficient approach to this litigation and thereby save all the parties and the court, considerable time, energy, and expense. It also permits the Plaintiffs to know which attachments actually go with their parent e-mails. Specifically, the review of ESI in its native format permits the plaintiffs to efficiently sift through the documents, using keyword searches, date searches, name searches, and even concept searches. This advances the goals of Fed.R.Civ.P 1 "to secure the just, speedy and inexpensive determination of every action and proceeding."

In turn, this enables the plaintiffs to quickly and efficiently review and reorder

---

[1] Plaintiffs incorporate by reference their argument regarding the number of documents/pages contained in Plaintiffs' Reply to State Defendants' Opposition to Plaintiffs' Motion to Compel Responses to Requests for Production of Documents in the Form in Which is Ordinarily Maintained or in a Reasonably Usable Form at pp 4-6.

the documents so as to create different possible factual scenarios. In short, the efficient use of ES I in its native format (or some other reasonably usable form) enables the plaintiffs to create different electronic mosaics of the documents and facts in this lawsuit, which also  permits the plaintiffs to readily view the issues in this lawsuit from new and fresh perspectives. Finally, it minimizes the possibility that a party can bury an important document in a large document production response.  No Rule supports' Wellcare/Ohana's position that it is entitled to deny Plaintiffs those efficiencies and delay production more than four months.

Intervenors complain mightily about how costly and burdensome it would be to produce the ESI in its native format, but they never describe how it would burden them specifically nor do they provide any actual estimate, invoice, or billing of the cost.  There is absolutely no evidence to show that Intervenor Wellcare/Ohana has even attempted to find out the cost of producing documents in native format. It has simply lifted language from opinions (where the parties did provide the court with evidence of the costs of production) and used the language to form buzz phrases. In fact, Intervenor Wellcare/Ohana does not even bother to describe the native format of the documents, where the documents resided, who are the custodians are, or what steps that they have taken to obtain this information.  In *U.S. v Board of County Commisioners of the County of Dona Ana*, 2009 U.S. Lexis 65540, No. CIV 08-0501 JB/ACT (D.N.M. July 27, 2009) at 26, the court ad-

dressed a claim that production of ESI (e-mails) would be unduly burdensome by stating "…the Court will need a more detailed foundation to make a decision, such as having affidavits from computer experts on the nature and costs that would be associated with compliance. At the present time, the Court will order that electronic discovery be produced within forty-five days of the hearing." A cynical person might infer that the Intervenors were merely engaging in delay and obfuscation.

B)   THE REFUSAL OF INTERVENOR WELLCARE/OHANA TO PARTICIPATE OR COMMUNICATE IN GOOD FAITH WITH THE PLAINTIFFS AS TO DISCOVERY AND ESI ISSUES INDICATES A PATTERN AND PRACTICE OF DILATORY TACTICS THAT WARRANT SANCTIONS

Plaintiffs incorporate by reference their arguments contained in Plaintiffs' Reply to State Defendants' Opposition to Plaintiffs' Motion to Compel Responses to Requests for Production of Documents in the Form in Which is Ordinarily Maintained or in a Reasonably Usable Form, Docket No. 324, at pp 10-11. Managing Discovery of Electronic Information: A Pocket Guide for Judges at p.5 lists in part, the discussion topics for a Rule 26(f) conference, which the Intervenor Wellcare/Ohana refused to address and continue to refuse to address.

C)   STATE DEFENDANTS EXHIBIT B, PART 2 SHOWS THE PROBLEM WITH THE SOLUTION OF "SEARCHABLE" PDF FORMATTED DOCUMENTS PROPOSED BY THE STATE DEFENDANTS AND THE INTERVENOR WELLCARE/OHANA, WHILE ALSO ILLUSTRATING WHY THE PRODUCTION OF ESI IN ITS NATIVE FORMAT IS PREFERABLE.

The mantra repeated *ad nauseum* by the State Defendants and Intervenors throughout their memoranda, is that the Plaintiffs never explained to the Defen-

dants the basis for their request for ESI. There are, of course, variations of this theme, at times the State Defendants claiming that the Plaintiffs offered no response whatsoever and at other times contending that Plaintiffs reasons for the production of ESI were not good enough to satisfy them.[2]   There is a suggestion of role-confusion in the aforementioned arguments.   It is the obligation of the party from whom discovery is requested to justify the failure to produce documents and information requested in the form requested, not the other way around.   Furthermore, the many reasons for producing ESI in it native format with metatdata preserved are well-established and obvious.   One such reason is described below.

The State Defendants' exhibits illustrate some, if not all, of the problems with refusing to produce ESI in its native format.   The exhibit "A" series for the State Defendants, was designated "paper" because it is a scanned image of the visible portion of an electronically-created document, converted through a printer, published on paper, and scanned to convert it back into an electronic document in PDF format.   Exhibit A is not searchable because the image the printer created was scanned back into electronic format to create an image in an electronic document

---

[2] The truth is that the Defendants will not accept any explanation by the Plaintiffs, as this might make for an efficient, fair, and low cost discovery process.  The State Defendants and Intervenors contend Plaintiffs failed to offer them good reasons despite the fact that the Plaintiffs, at their own expense, brought their to the October 2, 2009 meet and confer meeting to explain the basis. The problem is not one of explanation, but of understanding, or willingness to understand.  Either the Defendants did not want to understand the reasons offered by IT consultant or they should get their own experts to explain things to them.

of a markedly different format than the native format of the electronically-created document Exhibit A is supposed to represent.

The Exhibit "B" series is an electronic document that was created by scanning it, converting it from the image the printer created back into an electronically stored document, and subjecting it to additional processing to create a supposedly "searchable" PDF-formatted document. Series "A" exhibits were scanned with Xerox WorkCentre Pro 265, while Series "B" was scanned using Paperport version 11. The Series "A" exhibits are static images and unsearchable. The Series "B" exhibits have text contents which are searchable to a degree, but not nearly as searchable as a document in its native format. The text in the series "B" documents is invisible, and represents the best guess of the Paperport software which further processed the scanned image.

The State Defendants' method of creating Series "B" (searchable PDF format) documents requires an operator to select all relevant e-mails (or other ESI), print the e-mail bodies or other ESI, open any e-mail attachments and print those, then run the printed documents through a scanner and an OCR program, and finally assemble this product into PDF files. Producing those same documents in native format requires one step, that the operator selects all relevant e-mails (or other ESI), save the e-mails (possibly as .pst or .eml files) and then burn the files to a CD or DVD. Both methods require that the relevant files be selected and then reviewed

for privilege or work product content[3]. **Ironically, the native format production involves only one step and is thus clearly more efficient, less time consuming, and less costly than the many steps the State Defendants performed.**

State Defendants' Exhibit B, part 2 (hereafter Exhibit "B,pt2") is a copy of a document that was scanned from paper and then run through OCR software (Paperport 11)[4]. When reading Exhibit B, pt2, we read the image layer, which is a picture of the letters on the documents. The text layer is the letters themselves. To a computer, there is a huge difference, and on a document that is an OCR'd PDF, the image layer and the text layer will not be the same. When you search an OCR'd PDF document, you are looking for string of letters. If those letters are garbled, then you won't find the words you are looking for. In order to determine what the text layer for Exhibit B, pt2 reads like, anyone can simply copy it and then paste it to another application (for example Word). This result will be what a computer would read when doing a search of OCR'd PDF document. There is no difference between the image layer or text layer of a document in its native format. There are differences between an image layer and text layer of an OCR'd PDF document, as

---

[3] The recently amended F.R.E. 502 minimizes any danger of inadvertent disclosure of privileged documents or work product.  The parties can also enter into a "claw back" agreement, which would afford further protection.

[4] No OCR software program is 100% accurate and the search rate accuracy of OCR on a page may depend upon whether or not the page was laser printed. The accuracy of any OCR also depends to a significant extent upon the condition of the paper copy being scanned.

shown below.

Plaintiffs' Exhibits 2 [Doc 324-3] and 2A [Doc 325-2] to their Reply to the State Defendants' Opposition were created by copying page 2 of Exhibit B,pt2 and pasting it into Microsoft Word. It is plain that the accuracy the OCR'd PDF (Exhibit B,pt2) is far from perfect. The lines that should read: "they are being treated as passively agreeing to the contract terms. How is CMS verifying State mapping of provider participation so that ongoing and available access to health care for the identified population is ensured? Patients covered by the existing Medicaid" come out in OCR'd PDF text layer as "pase-ively-agfccing te44e eeinitreet-iterms7 Ho-wisi-etaie verifvtrrerithateimappiricrottorcrnictertrarttctratton so--that ongoing and available access to health care_for_the Patients ccoovveerreedd by the existing Medicaid program have come forward stating they are not being given a". The computer will not read or search accurately over the garbled letters, thereby rendering any search incomplete and inaccurate.  In this case, word searches for covered, verifying, and identifying would not return page 2.

Page 2 of Exhbit B,pt2 is simply one page in an estimated production by the State Defendants of at least 3,500 pages. A rough calculation shows that there are likely to be at least 3,500 mistakes, which would impair the accuracy of any keyword, date, name, or concept search. If you were to measure the errors in terms of the number of lines in the documents (based upon Ex.B,pt2), then the OCR'd PDFs

contain 14,000 erroneous text layer lines, which would impact any searches. If you were to measure the errors in terms of words, then the OCR'd PDFs would contain approximately 63,000 erroneous words, which would affect any search. The use of OCR'd PDFS, almost by definition, compromises the integrity of document searches. The use of documents in native format does create these problems.

II.   <u>CONCLUSION</u>

Intervenor Wellcare/Ohana has the burden of showing how the production of ESI with metadata will be burdensome and too costly. It does neither in its opposition, Doc 317. It provides no affidavits from computer experts to support its claim. It claims now that the protective order drafted by it and the other state case Defendants will not protect it if it should release medical records. This is somewhat disheartening, since the state case Defendants convinced the court to accept the Defendants version of a protective order *in toto* over the version offered by the Plaintiffs. What then were the State Defendants and Intervenors thinking and doing by offering a protective order that doesn't protect? How could the cost of producing the ESI in its native format with metadata be greater than the method of having an operator select all relevant e-mails (or other ESI), print the e-mail bodies or other ESI, open any e-mail attachments and print those, then run the printed documents through a scanner and an OCR program, and finally assembling this product into PDF files.

A privilege or work product search has to be performed by Intervenor Wellcare/Ohana under either scenario. It fact it is probably more efficient to perform a privilege or work product search using keywords, dates, and names on the ESI in its native format. Regardless, Intervenor Wellcare/Ohana would be protected by Fed.R.Civ.P 26(b)(5)(B) and F.R.E. 502 with respect to the inadvertent release of work product or privileged material. Additionally, the parties could also enter into a protective order or claw-back agreement, but maybe this time the Plaintiffs should draft it.

Intervenor Wellcare/Ohana refused to cooperate or communicate with the Plaintiffs on matters of discovery and ESI production and it continues to do so. The State Defendants should now explain to the court why they have failed to comply with the mandates of Rule 16 as to at least trying to create a discovery plan. Sanctions are warranted against Intervenor Wellcare/Ohana.

Dated:  Honolulu, Hawai`i, October 23, 2009

/s/ Rafael del Castillo
RAFAEL G. DEL CASTILLO
BRUCE F. SHERMAN

Attorneys for Plaintiffs
G., parent and next friend of K.,
a disabled minor child, et al.