Rafael G. del Castillo  6909-0
rafa@hawaii.rr.com
Jouxson-Meyers & del Castillo
A Limited Liability Law Company
302 California Avenue, Suite 209
Wahiawa, Hawaii 96786
Telephone: 808-621-8806; Facsimile: 808-422-8772

Bruce F. Sherman  5996-0
Attorney at Law
1164 Bishop Street, Ste 124
Honolulu, Hawai'i 96813
Telephone: (808) 221-0901
bfs@bfshermanlaw.com

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| G., parent and next friend of K., a disabled minor child, et al.,<br><br>    Plaintiffs,<br>vs.<br><br>State of Hawaii, et al.<br><br>    Defendants.<br>_____<br>G., parent and next friend of K., a disabled minor child, et al.,<br><br>    Plaintiffs,<br>vs.<br><br>United States Department of Health and Human Services, et al. | CIVIL NO. 08-00551 ACK/BMK<br>CIVIL NO. 09-00044 ACK/BMK<br>Consolidated Cases (Civil Rights)<br><br>PLAINTIFFS' REPLY TO INTERVENOR UNITED/EVERCARE'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS IN THE FORM IN WHICH IS ORDINARILY MAINTAINED OR IN A REASONABLY USABLE FORM<br><br>HEARING:<br>Time:     2:00 p.m.<br>Date:     October 27, 2009<br>Judge:    Hon. Barry M. Kurren |

Defendants.         )   Trial Date:  March 16, 2010
                    )
_____ )

PLAINTIFFS' REPLY TO INTERVENOR UNITED/EVERCARE'S OPPOSI-
TION TO PLAINTIFFS' MOTION TO COMPEL RESPONSES TO REQUESTS
FOR PRODUCTION OF DOCUMENTS IN THE FORM IN WHICH
<u>IS ORDINARILY MAINTAINED OR IN A REASONABLY USABLE FORM</u>

Intervenor United/Evercare failed in its Opposition, Docket No. 318 ("Doc. 318") to address the issues before the Court on Plaintiffs' Motion to Compel, and instead attempts to persuade the Court to decide that producing ESI is too costly without providing the Court any factual basis on which to decide whether there is a cost involved and whether it is too much. Notably, United/Evercare offers no excuse for its refusal to confer with Plaintiffs about ESI and the form of production prior October 2, nor any excuse for failing to produce anything at all in response to Plaintiffs' May 4 request.

United/Evercare asks this Court to rule that producing documents in their native format is too costly and burdensome when the obvious facts prove the opposite.  Despite that, United/Evercare asks the Court to so rule without offering a single fact to support is too-costly contentions.  Incredibly, United/Evercare furthermore contends that Plaintiffs' Motion to Compel is "premature" after it has delayed and failed to produce a single document since its responses were due in the first week of June 2009.  Even more incredibly, having persuaded the Court to issue the protective order to which it subscribed, United/Evercare now asks the

2

Court to grant it relief from its discovery obligations on the grounds that the protective order will not protect it.  None of the foregoing positions meet United/Evercare's burden, nor do they have any merit.

I. ARGUMENT

Intervenor United/Evercare has yet to comply with its obligation to produce documents pursuant to the Plaintiffs' Request for Production of Documents dated May 4, 2009. The issues relating to discovery and ESI should have been addressed six (6) months ago, but Intervenor United/Evercare refused to discuss or address any of the Fed.R.Civ.P 16 and 26 questions with the Plaintiffs at that time. **Intervenor United/Evercare still insists that it does not have to produce the requested documents in any format other than paper or possibly as static images on a CD.**

Intervenor United/Evercare challenges the Plaintiffs to provide it with good cause for the production of the requested documents in their native format with metadata or in some reasonably usable form, knowing full well that it will reject any and all explanations offered by the Plaintiffs. Plaintiffs brought their computer consultant, Jeff Mings, to the October 2, 2009 Meet and Confer to explain the difference between dynamic files (native format) and static images (PDFs and TIFFs). Mr. Mings explained the advantage in terms of searching files in native format. He indicated how this would save Plaintiffs time and effort when compared

with searching paper documents or static images and that it simplified production because, once they are selected for production, producing documents in their native format in nearly all cases is as simple as pushing a button/key. The mantra repeated again and again by the State Defendants and Intervenors that the Plaintiffs did not explain their reason for requesting ESI is wholly unsustainable given fact that the Plaintiffs brought a computer consultant to the October 2, 2009 meeting. Their assertions are at best disingenuous. Intervenor United/Evercare's position that it is not required to produce in any other form than paper or static images (despite the plain language of Fed.R.Civ.P. 34) is, to say the least, extreme. Even, the State Defendants and Intervenor Wellcare/Ohana agree that the Plaintiffs are entitled to be able to perform text searches on their production.

The attempts made by the Plaintiffs to reach some kind of agreement regarding electronically stored information ("ESI") with Intervenor United/Evercare are fully described in their Memorandum in Support (doc#286-2) at pp 2-8. Intervenor United/Evercare cannot reasonably contest those facts. The Plaintiffs unequivocally requested the ESI in its native format or a reasonably usable form, well before any production (none to date) by Intervenor United/Evercare had occurred.  United/Evercare now asks this Court to reward it for lying in wait.

    A)    <u>THE PRODUCTION OF ESI IN THE IMAGE PDF FORMAT WILL PREVENT THE PLAINTIFFS FROM EFFICIENTLY USING THE</u>

INFORMATION IN LITIGATION

The Advisory Committee notes to the 2006 Amendments to Rule 34 state in pertinent part:

> [T]he option to produce in a reasonably usable form does not mean that a responding party is free to convert electronically stored information from the form in which it is ordinarily maintained to a different form that makes it more difficult or burdensome for the requesting party to use the information efficiently in the litigation. **If the responding party ordinarily maintains the information it is producing in a way that makes it searchable by electronic means, the information should not be produced in a form that removes or significantly degrades this feature**. [emphasis added]

The court in *Bray & Gillespie Management LLC v Lexington Insurance Company,* __F.R.D.__, 2009 WL 546429 (M.D.FL March 4, 2009) dealt with a situation where the Plaintiff sought to produce ESI as a TIFF format with metatdata removed. The court, id at 18, stated:

> B & G kept e-mail and other ESI in computer files that were full text searchable with associated metadata. The ESI B & G produced as TIFF images without metadata eliminated the search capabilities that would have been available if B & G had produced ESI in native format. To conduct searches, Lexington would have had to convert the TIFF images into a searchable text format through OCR. *See* Doc. No. 222 at 11. Because of the significant limitations of OCR discussed above, the ability to search would only have been as good as the ability of the OCR software to translate what appeared in the TIFF images. OCR also would not identify metadata that did not appear in the TIFF images, such as dates of creation and modification of ESI. Thus, I find the form of production selected by B & G removed or significantly degraded Lexington's ability to search the ESI and, accordingly, that it was not in a reasonably usable form as required by Rule 34.

*Bray & Gilespie Management LLC*, supra at 19-20, with respect to the argument that Intervenor United/Evercare is substantially justified in not producing ESI with associated metadata, specifically distinguishes the following cases some of which were relied upon for that proposition by Intervenor United/Evercare: *Kentucky Speedway, LLC v. NASCAR, Inc.*, 2006 WL 5097354 (E.D.Ky. Dec.18, 2006); *Michigan First Credit Union v. Cumis Ins. Soc'y, Inc.*, No. 05-74423, 2007 WL 4098213 (E.D.Mich. Nov.16, 2007); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig. ("In re Payment Card")*, No. MD 05-1720(JG) (JO), 2007 WL 121426 (E.D.N.Y. Jan. 12, 2007).

The court in *Covad Communications Company v. Revonet, Inc.*, 2009 U.S. Lexis 75325 (D.D.C. August 25, 2009) ("Convad II") at 13 stated:

> The cases interpreting Federal Rule of Civil Procedure 34 3 conclude that it is therefore improper to take an electronically searchable document and either destroy or degrade the document's ability to be searched. See, e.g., Dahl v. Bain Capital Partners, Inc., No. 07-CV-12388, 2009 U.S. Dist. LEXIS 52551, 2009 WL 1748526, at *3 (D. Mass. June 22, 2009) (requiring production of spreadsheets in native format); In re Classicstar Mare Lease Litig., No. 07-CV-353, 2009 U.S. Dist. LEXIS 9750, 2009 WL 260954, at *3 (E.D. Ky. Feb. 2, 2009) (production may not degrade searchability); Goodbys Creek, LLC v. Arch Ins. Co., No. 07-CV-947, 2008 U.S. Dist. LEXIS 79660, 2008 WL 4279693, at *3 (M.D. Fla. Sept. 15, 2008) (same; conversion of e-mails from native to PDF not acceptable); White v. Graceland Coll. Ctr. for Prof'l Dev. & Lifelong Learning, 586 F. Supp. 2d 1250, 1264 (D. Kan. 2008) (same); L.H. v. Schwarzenegger, No. 06-CV-2042, 2008 U.S. Dist. LEXIS 86829, 2008 WL 2073958, at (E.D. Cal. May 14, 2008) (same); United States v. O'Keefe, 537 F. Supp. 2d 14, 23 (D.D.C. 2008) (applying principle in criminal case) [footnote omitted]

Intervenor United/Evercare implies that the amount of discovery is too small to warrant in anything but paper. There is nothing in the Fed.R.Civ.P 26 or 34 that creates a threshold number of documents or pages, which, if the projected number of discovery documents falls below it, mandates production of documents in paper or static image format[1]. Intervenor United/Evercare while chastising the plaintiffs for insisting upon the production of ESI in its native format, or a reasonably usable form, seems to forget that it has had since May 4, 2009 in which to review and to deliver discovery documents to the plaintiffs.

The production of ESI in its native format will permit the plaintiff's to save time, energy, and expense. It will make for a much more efficient approach to this litigation and thereby save all the parties and the court, considerable time, energy, and expense. It also permits the Plaintiffs to know which attachments actually go with their parent e-mails. Specifically, the review of ESI in its native format permits the plaintiffs to efficiently sift through the documents, using keyword searches, date searches, name searches, and even concept searches. This advances the goals of Fed.R.Civ.P 1 "to secure the just, speedy and inexpensive

---

[1] Plaintiffs incorporate by reference their argument regarding the number of documents/pages contained in Plaintiffs' Reply to State Defendants' Opposition to Plaintiffs' Motion to Compel Responses to Requests for Production of Documents in the Form in Which is Ordinarily Maintained or in a Reasonably Usable Form at pp 4-6.

determination of every action and proceeding."

In turn, this enables the plaintiffs to quickly and efficiently review and reorder the documents so as to create different possible factual scenarios. In short, the efficient use of ES I in its native format (or some other reasonably usable form) enables the plaintiffs to create different electronic mosaics of the documents and facts in this lawsuit, which also permits the plaintiffs to readily view the issues in this lawsuit from new and fresh perspectives. Finally, it minimizes the possibility that a party can bury an important document in a large document production response.

Intervenor United/Evercare speciously complains that producing documents in their native form is more costly and burdensome than converting them to images, and printing them on paper.  United/Evercare asks this Court to accept that clearly illogical argument with no facts whatsoever to sustain such a conclusion, nothing illustrating the supposed specific burdens, nor even an actual estimate, invoice, or billing of the cost.  United/Evercare asks the Court to decide that producing ESI in its native formation is too costly based on absolutely no evidence even suggesting that it has attempted to ascertain the cost of producing documents in native format.  In fact, Intervenor United/Evercare does not even bother to describe the native format of the all of the documents, where the documents reside, the identity of the custodians, or what steps that it has taken to obtain that

information.

In *U.S. v Board of County Commisioners of the County of Dona Ana*, 2009 U.S. Lexis 65540, No. CIV 08-0501 JB/ACT (D.N.M. July 27, 2009) at 26, the court addressed a claim that production of ESI (e-mails) would be unduly burdensome by stating "…the Court will need a more detailed foundation to make a decision, such as having affidavits from computer experts on the nature and costs that would be associated with compliance. At the present time, the Court will order that electronic discovery be produced within forty-five days of the hearing." A cynical person might infer that the Intervenors were merely engaging in delay and obfuscation. Actually, one needn't be a cynic to understand the purpose of Intervenor United/Evercare's opposition to the document format and even the production of documents (which were originally requested on **April 4, 2009).** The reason is simply to deny the Plaintiffs any discovery, while filing motions for summary judgment. In line with strategy, the State Defendants filed a motion for summary judgment today (October 23, 2009). It is beyond cavil that the Defendants are orchestrating this discovery stoppage in order to unjustly prevent the Plaintiffs from obtaining discovery for opposing the summary judgment motions which have been filed or will be filed soon.

    B)   THE REQUIREMENTS OF FED.R.CIV.P. 16 AND 26 SHOULD HAVE BEEN MET SIX MONTHS AGO AND TO ADDRESS THE FAILURE OF INTERVENOR UNITED/EVERCARE NOW IS CERTAINLY NOT PREMATURE.

Plaintiffs incorporate by reference their arguments contained in Plaintiffs' Reply to State Defendants' Opposition to Plaintiffs' Motion to Compel Responses to Requests for Production of Documents in the Form in Which is Ordinarily Maintained or in a Reasonably Usable Form, Docket No. 324, at pp 10-11. Managing Discovery of Electronic Information: A Pocket Guide for Judges at p.5 lists in part, the discussion topics for a Rule 26(f) conference, which the Intervenor United/Evercare refused to address and continue to refuse to address.

This motion might not have been necessary if Intervenor United/Evercare had come to the Rule 26(f) discovery meeting with the intention of cooperating in addressing the issue of ESI. Fed.R.Civ.P 16(f)(1)(B) provides for sanctions, including attorney's fees, if a party or its attorney " is substantially unprepared to participate-or does not participate in good faith-in the conference…."Fed.R.Civ.P 16(b)(3)(B)(iii) states that the Scheduling Conference and Scheduling Conference Order may "provide for discovery of electronically stored information." The failure of Intervenor United/Evercare to discharge its obligations under Rule 26(f) at the meeting of the parties cannot now be excused. It is the height of arrogance to now claim that addressing these issues now is premature. Intervenor United/Evercare should be sanctioned for this argument alone.

C)  STATE DEFENDANTS EXHIBIT B, PART 2 SHOWS THE PROBLEM WITH THE SOLUTION OF "SEARCHABLE" PDF FORMATTED DOCUMENTS PROPOSED BY THE STATE DEFENDANTS AND THE

INTERVENOR UNITED/EVERCARE, WHILE ALSO ILLUSTRATING WHY THE PRODUCTION OF ESI IN ITS NATIVE FORMAT IS PREFERABLE.

The mantra repeated ad nauseum by the State Defendants and Intervenors throughout their memoranda, is that the Plaintiffs never explained to the Defendants the basis for their request for ESI. There are, of course, variations of this theme, sometimes the Defendants claim that the Plaintiffs offered no response whatsoever and sometimes they claim that the Plaintiffs offered no good reason for the production of ESI.[2] These contentions are to no avail because it is Defendants and Intervenors who bear the burden of showing that they should not be compelled to produce documents in their native form, in compliance with Plaintiffs' timely requests.

In fact, the State Defendants have provided the Court with a fine example of the extra steps required to convert the documents from their native format into a **less** usable form, and have demonstrated just how that process materially diminishes the utility of the documents produced. The State Defendants offered a series of exhibits, "A" and "B" side-by-side to purportedly demonstrating that they can, through a series of steps, produce documents that are as useful as the

---

[2] The State Defendants and Intervenors make this claim despite the fact that the Plaintiffs, at their own expense, brought their IT consultant to the October 2, 2009 meet and confer meeting to explain the basis. Either the Defendants did not want to understand or they should get their own computer experts to explain things to them. The truth is that the Defendants will not accept any explanation by the Plaintiffs, as this might make for a efficient, fair, and low cost discovery process.

documents in their native format. Missing from the State Defendants' contentions, and missing from either of the Intervenors' assertions about producing the documents pursuant to Plaintiffs' requests, is any legitimate justification for subjecting the documents to the conversions from electronically stored information into images, then back into electronically stored information in a materially different format, and then adding a layer of hit-or-miss text information to create less than adequate search utility. They offer no excuse for these machinations because they have no legitimate one. It must therefore be inferred that their true purposes are to disable Plaintiffs' efforts, hide information, delay, and create collateral disputes to prevent this case from reaching determinations on the merits. There is nothing of good faith in their enterprise.

Intervenor United/Evercare and the State Defendants ask this Court to permit them to produce disabled documents or documents which have been doctored with information the content of which can only be discovered by further processing, all in service of sustaining their improper desire to avoid producing documents in their native format. As described in Doc. 324 and 326, page 2 of the State Defendants' Exhibit B, part 2, provides this Court with further justification for rejecting the State Defendants' proposals to subject documents in their native format to multiple conversions and then doctoring those documents with information that was **never even part of the documents in the first place,**

creating potential evidentiary problems which can only be guessed at and imagined, and which should certainly be feared. Clearly the State Defendants and Intervenors seek protections beyond those the Court could ever reasonably provide.

D) THE PROTECTIVE ORDER DRAFTED BY INTERVENOR UNITED/EVERCARE AND ADOPTED BY THE COURT SHOULD BE SUFFICIENT TO ADDRESS ANY CONCERNS REGARDING UNLAWFUL DISCLOSURE.

Intervenor United/Evercare now claims that the protective order it drafted and persuaded the Court to adopt over Plaintiffs' proposed protective order will not protect it if it should release medical records or other records. United/Evercare contends this despite the confidentiality agreements required to be signed by anyone having access to documents marked "confidential". The argument is disturbingly duplicitous in circumstances in which United/Evercare convinced the Court to accept its version of the protective order instead of Plaintiffs. Absent from that argument was any inkling of an intention to use the protective order to avoid discovery, and in fact this Court expressed its view that United/Evercare's proposed protective order would facilitate discovery. If that were not the case, United/Evercare, as the drafter and leading proponent of the protective order, had a clear duty to advise the Court of its misgivings at the hearing on the protective order. It kept silent, and thus may not now be heard to argue against the version of the protective order championed a few weeks ago.

Intervenor United/Evercare furthermore offers this Court no affidavits from

computer experts stating how and why it would be burdensome or impossible to redact certain portions of records, if, in fact, redaction were necessary where the production is under a protective order. It was Intervenor United/Evercare's burden to make that showing.  Furthermore, the answer to legitimate concerns about the protective order is not to bar discovery.  Those concerns may be addressed and resolved when timely raised.  Intervenor United/Evercare would be protected by Fed.R.Civ.P 26(b)(5)(B) and F.R.E. 502 with respect to the inadvertent release of work product or privileged material, and the parties could also enter into a protective order or claw-back agreement.  United/Evercare's disingenuous avoidance is meritless.

    II.    <u>CONCLUSION</u>

Intervenor United/Evercare failed to meets its burden of showing how the production of ESI with metadata would unduly burden it.  It has provided no affidavits from computer experts to support its counterintuitive contention that the cost of producing the ESI in its native format with metadata would somehow be greater than the multiple steps, conversions, and doctoring of documents of selecting all relevant e-mails (or other ESI), printing the e-mail bodies or other ESI, opening any e-mail attachments and printing those, then running the printed documents through a scanner and an OCR program, and finally assembling the product into PDF files, to which optical code reading  then adds its best guess as to

the text the images actually represent.

Intervenor United/Evercare refused to cooperate, participate, or communicate with the Plaintiffs on matters of discovery and ESI production and it continues to do so. In fact, Intervenor United/Evercare should have made ESI disclosures in it Initial Disclosures. It should now explain to the court why it has failed to comply with the mandates of Rule 16 as to at least trying to create a discovery plan. Sanctions are warranted against Intervenor United/Evercare.

Dated:  Honolulu, Hawai`i, October 23, 2009

/s/ Rafael del Castillo
RAFAEL G. DEL CASTILLO
BRUCE F. SHERMAN

Attorneys for Plaintiffs
G., parent and next friend of K.,
a disabled minor child, et al.