IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| G., PARENT AND NEXT FRIEND OF K., A DISABLED CHILD, ET AL., ) | Civ. No. 08-00551 ACK-BMK Civ. No. 09-00044 ACK-BMK (Consolidated) |
| Plaintiffs, ) | |
| vs. ) | |
| STATE OF HAWAII, DEPARTMENT OF HUMAN SERVICES, ET AL., ) | |
| Defendants. ) | |
| G., PARENT AND NEXT FRIEND OF K., A DISABLED CHILD, ET AL., ) | |
| Plaintiffs, ) | |
| vs. ) | |
| UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, ET AL., ) | |
| Defendants. ) | |

ORDER GRANTING THE STATE DEFENDANTS' MOTION IN LIMINE, AND THE
JOINDERS THEREIN, TO EXCLUDE ANY EXPERT TESTIMONY BY VERNON E.
LEVERTY, AND TO STRIKE HIS REPORT

BACKGROUND

         As the parties and the Court are extensively familiar
with the facts and background of this case, the Court will only
present the procedural background relating to the instant motion
in limine.  For a detailed description of the factual background
of this case, see the order granting in part, and denying in

part, the State Defendants' motion for summary judgment, and the joinders therein, and denying Plaintiffs' motion for summary judgment on licensure and solvency issued on December 24, 2009. G. v. Hawaii, Dep't of Human Servs., Civ. Nos. 08-00551 ACK-BMK & 09-00044 ACK-BMK, 2009 U.S. Dist. LEXIS 120529 (D. Haw. Dec. 24, 2009) ("12/24/09 Order").

On December 15, 2009, Defendants the State of Hawaii, Department of Human Services ("State DHS"), and Lillian B. Koller, in her official capacity as the Director of the State DHS (collectively, "State Defendants" or "State") filed a motion in limine to exclude any expert testimony by Vernon E. Leverty, and to strike his report ("State Defs.' Leverty MIL"), which was accompanied by a memorandum in support ("State Defs.' Leverty MIL Mem.").

On December 17, 2009, Intervenor United Healthcare Insurance Company d/b/a Evercare ("Evercare") filed a joinder in the State Defs.' Leverty MIL.

On December 22, 2009, Intervenor WellCare Health Insurance of Arizona, Inc. d/b/a Ohana Health Plan ("WellCare of Arizona") filed a substantive joinder in the State Defs.' Leverty MIL ("WellCare of Arizona Joinder Mem.").

On February 16, 2010, Plaintiffs filed an opposition to

2

the State Defendants' Leverty MIL ("Pls.' Opp'n").[1]

On February 19, 2010, the State Defendants filed a reply to Pls.' Opp'n ("State Defs.' Reply").

In addition, on February 23, 2010, WellCare of Arizona filed a reply to Pls.' Opp'n ("WellCare of Arizona Reply").

On March 8, 2010, the Court held a hearing on the State Defs.' Leverty MIL.

## DISCUSSION

The district court has been tasked with the gate keeping function to determine the admissibility of an expert witness' testimony. See Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993); Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141 (1999) (stating that the trial judge must ensure that all scientific testimony is both relevant and reliable). An expert's testimony "is, therefore, subject to the Daubert-Kumho criteria. The testimony must be both reliable and relevant." Sullivan v. U.S. Dep't of Navy, 365 F.3d 827, 833 (9th Cir. 2004).

Fed. R. Evid. 702 provides the threshold test for expert witness testimony:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to

---

[1] Plaintiffs were granted leave of court to file the opposition late. See Order Granting Plaintiffs' Ex Parte Motion for Extension of Time for Filing Plaintiffs' Opposition Memoranda, Docket No. 553 (February 16, 2010).

> understand the evidence or to determine a fact in
> issue, a witness qualified as an expert by
> knowledge, skill, experience, training, or
> education, may testify thereto in the form of an
> opinion or otherwise, if (1) the testimony is
> based upon sufficient facts or data, (2) the
> testimony is the product of reliable principles
> and methods, and (3) the witness has applied the
> principles and methods reliably to the facts of
> the case.

Fed. R. Evid. 702.  The proffered expert testimony therefore must be helpful to the trier of fact as well as reliable and relevant. "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful."  Daubert, 509 U.S. at 591 (citations omitted); see also United States v. Cantrell, 999 F.2d 1290, 1292 (8th Cir. 1993) (an expert's testimony is not helpful if it does not address a matter essential to the case).

In addition, an expert may not testify as to the content of domestic law or the application of that law to the evidence.  See Aquilar v. Int'l Longshoremen's Union Local #10, 966 F.2d 443, 447 (9th Cir. 1992) (trial court properly excluded expert opinion on the legal issues of reasonableness and forseeability of reliance since these were "matters of law for the court's determination").  The rationale for this rule is obvious: "each courtroom comes with a legal expert, called the judge."  Burkhart v. Washington Metro. Area Transp. Auth., 112 F.3d 1207, 1213 (D.C. Cir. 1997).

I.        **The Expert Report of Vernon E. Leverty**

Plaintiffs seek to offer the expert testimony of Vernon

4

E. Leverty ("Mr. Leverty") at trial to establish that the State

Defendants and Intervenors Evercare and WellCare of Arizona are

in violation of the solvency standards set forth in 42 U.S.C.

§ 1396b(m)(1)(A)(ii), (C)(i).  Mr. Leverty was formerly a senior

insurance regulator for the State of Nevada and has been

qualified as an expert in both federal and state courts.  <u>See</u>

State Defs.' Leverty MIL, Ex. A, Expert Report of Vernon E.

Leverty at 1 ("Leverty Report"); Pls.' Opp'n at 3.  Mr. Leverty

reviewed a number of materials in preparing his report.  Among

these materials are the Court's prior orders in this matter,

WellCare of Arizona's and its parent company's financial

statements and other correspondence by WellCare of Arizona, the

administrative record, and the Medicaid act.  <u>See</u> Leverty Report

1-11.

Mr. Leverty opines that the following eight factors

should be considered when examining the financial integrity of an

insurer (in this case the MCOs):

1.   The insurer must be in compliance with the
     Insurance Codes and Regulations in all States
     in which it operates and holds a certificate
     of authority.

2.   The insurer must be in compliance with its
     charter powers.

3.   The insurer must maintain reserves as
     required in each state it operates (assets
     and liabilities) as applicable to the kind or
     kinds of insurance transacted by the insurer.

4.   The insurer must be financially solvent and

       have current and useful financial data such as timely filed audited reports and annual statements.

5.    The insurer must not have any directors, officers, or other individuals materially part of the management of the insurer that based upon reliable information demonstrate that they are incompetent, or dishonest or untrustworthy, or of unfavorable business repute.

6.    The managers are so lacking in insurance company managerial experience in operations of the kind proposed as to make such operation, currently or prospectively hazardous to or contrary to the best interests of the persons to whom coverage is being afforded.

7.    Whether there is a person or persons of unfavorable business repute who are directly or indirectly through ownership, control, management, or other business relations affiliated with the company.

8.    Whether the business operations are or have been marked, to the injure [sic] creditors or the public by illegality or by the manipulation of assets, or of accounts, or by bad faith.

Id. at 11-12. Mr. Leverty surmises that "any entity including the state or federal government should have used [these eight factors] as a basis of any analysis to determine if Ohana and/or WellCare should be [chosen as an MCO in the QExA Program]." Id. at 12.

     After presenting the eight factors listed above, Mr. Leverty enumerates, then discusses, his opinions in four major headings throughout the report. See id. 12-25.

The first heading states: "Ohana had no capital or surplus and had zero net worth when [DHS] selected it as one of the two providers on February 1, 2008." Id. at 12. Mr. Leverty explains that pursuant to Hawai'i Revised Statutes ("H.R.S.") § 432D-8, an HMO must have a minimum net worth of $2 million to receive an HMO license. Id.

The second heading reads:

> As of January 30, 2009, WellCare's financial records demonstrates [sic] lack of useful data for any appropriate financial analysis or its actual financial condition. The failure of WellCare, its parent and related companies to provide required audited financials prevents the ability for anyone, including CMS, from performing accurate financial condition analysis of WellCares [sic]. But such failures to have useful data and audited financial statements are in fact indicators of financial problems of WellCare.

Id. Based on the financial records Mr. Leverty was able to obtain, Mr. Leverty asserts that in six months WellCare of Arizona's total capital and surplus fell 21.3%, which is outside of the "usual" range, as determined by the National Association of Insurance Commissioners ("NAIC"). Id. at 13. Given that "the financial condition of [WellCare of Arizona] is diminishing," Mr. Leverty concludes that "the financial condition of WellCare Insurance Company of Arizona is poor." Id. 13-14.

The third heading presented in the Leverty Report reads:

> Both Ohana and WellCare are related companies of WellCare Health Plan which has had several recent

7

> actions in the state of Florida and the Securities
> Exchange Commission that demonstrate that its
> officers and directors and others in its
> management are either incompetent, untrustworthy,
> dishonest, or lack business competence which
> demonstrates severe question on the moral
> integrity of management.

Id. at 14.  Mr. Leverty notes that WellCare of Arizona is a wholly owned subsidiary of the WellCare Management Group, Inc., which is a wholly owned subsidiary of Health Management, Inc., which in turn is a wholly owned subsidiary of WellCare Health Plans, Inc. ("WellCare Health").  Id. at 14-15.  The report then goes on to describe that there have been allegations of fraud on the part of one of the subsidiaries of WellCare Health in Florida.  Id. at 15-20.

The fourth, and final, heading presented in the Leverty Report states: "the failure to have audited financial statements and repeated failure to file audited financials shows that WellCare was in financial crisis."  Id. at 20.  Mr. Leverty observes that Hawai'i law requires that all authorized insurers file annual statements with both the Hawai'i Division of Insurance as well as the NAIC.  Id. (citing H.R.S. § 301(a); 431:3-302(a)).  Mr. Leverty notes that WellCare of Arizona violated this requirement for 2008, citing a Form 10-K filed by WellCare Health on January 23, 2009, which allegedly admits that its subsidiaries did not file annual statements required by the state law.  Id.  In the Form 10-K, WellCare Health explained that

8

the failure to timely file the required financial statements for WellCare Health's regulated subsidiaries could result in the imposition of sanctions and penalties.  Id.  The rest of Mr. Leverty's observations under the fourth heading relate to WellCare Health's alleged violation of federal reporting requirements to the Securities Exchange Commission.  See id. 20-25.  Mr. Leverty opines that "the lack of audited financial statements is one of the indicia of insolvency.  Since regulators require audited financial statements . . . the failure to have audited financial statements impair the license of the insurer. WellCare's [failures] . . . shows that it was insolvent during the relevant time periods."  Id. at 25.

## II.      The Court's December 24, 2009 Order

The State Defendants and WellCare of Arizona assert that the purported testimony of Mr. Leverty is not relevant to the remaining issues in this matter and also that his opinions would not assist the trier of fact.  See State Defs' Reply at 1-4; WellCare of Arizona Reply at 6.  Because the State Defendants and WellCare of Arizona argue that Mr. Leverty's purported testimony is not germane to the remaining issues in this case regarding solvency, the Court will begin by setting forth the solvency standards mandated by the Medicaid act and summarize the Court's holding in its 12/24/09 Order.

42 U.S.C. § 1396u-2(a)(3) provides that "[a] State must

permit an individual to choose a managed care entity from not less than two such entities that meet the applicable requirements of this section, and of [42 U.S.C. § 1396b](m)."  In order to qualify as an managed care organization ("MCO"), an organization must (1) make "adequate provision against the risk of insolvency, which provision is satisfactory to the State," (2) meet "solvency standards established by the State for private health maintenance organizations or [be] licensed or certified by the State as a risk-bearing entity," and (3) assure "that individuals eligible for benefits under [Medicaid] are in no case held liable for debts of the organization in case of the organization's insolvency."  42 U.S.C. §§ 1396b(m)(1)(A)(ii), (C)(i); see also 42 C.F.R. § § 438.106, 438.116.  In Counts I through IV of the State Second Amended Complaint, Plaintiffs contend that the QExA Contractors failed to meet these requirements and thus do not qualify as MCOs.  See St. 2d Am. Compl. ¶¶ 92, 98, 102.

On December 24, 2009, the Court issued an order granting the State Defendants' licensure motion for summary judgment, and the joinders therein, regarding the second solvency requirement, and denying Plaintiffs' cross-motion for summary judgment on issues pertaining to the QExA Contractors' licensure and solvency.  See 12/24/09 Order at *116-*18.  Thus, in its 12/24/09 Order, the Court granted summary judgment for the State Defendants' and Intervenors on the second solvency requirement,

but not with respect to the first and third requirements.  <u>See</u> <u>id.</u>[2/]

## A.    The First Requirement

The first solvency requirement is that an organization must make "adequate provision against the risk of insolvency, which provision is satisfactory to the State." 42 U.S.C. § 1396b(m)(1)(A)(ii).[3/]  This standard is implemented in the QExA Program through RFP § 71.800, which requires each QExA Contractor to "warrant[] that it is of sufficient financial solvency to assure the DHS of its ability to perform the requirements of the

---

[2/] Because the State Defendants' Leverty MIL was filed before the Court issued its 12/24/09 Order, the State Defendants and WellCare of Arizona refer to the second solvency requirement and argue that the relevant question is not whether the State <u>should</u> have issued licenses to Evercare and WellCare of Arizona, but rather whether they are actually licensed.  <u>See</u> State Defs.' Leverty MIL Mem. at 1; WellCare's of Arizona Joinder Mem. at 4-5. The Court agrees and in its 12/24/09 Order, the Court granted summary judgment in favor of the State Defendants and Intervenors as to the second solvency requirement.  <u>See</u> 12/24/09 Order at *107-*08 ("[T]he Court finds that Evercare and WellCare of Arizona are 'licensed or certified by the State as a risk-bearing entit[ies],' such that they may perform the services required by the QExA Contracts.").  Accordingly, the Court need not address Mr. Leverty's opinion that the State should not have issued licenses to Evercare and WellCare of Arizona.

[3/] In Plaintiffs' Solvency MSJ, they argued that Ohana, the MCO that was first awarded the QExA Contract along with Evercare, did not meet the first solvency requirement.  <u>See</u> <u>id.</u> at *81. The Court observed, however, that on May 15, 2008, prior to the contract being approved by the CMS, Ohana was merged into WellCare of Arizona.  <u>Id.</u> at *84.  Accordingly, in its 12/24/09 Order, the Court held that "WellCare of Arizona is the entity that should be analyzed in considering the first solvency standard."  12/24/09 Order at *86.

contract," "provide sufficient financial data and information to prove its financial solvency," and "comply with the solvency standards established by the State Insurance Commissioner for private health maintenance organizations or health plans licensed in the State of Hawaii."  12/24/09 Order at *73.

Because the RFP required that the MCOs comply with the solvency standards established by the State Insurance Commissioner for private health maintenance organizations or health plans licensed in the State of Hawai'i, the Court described the Hawai'i solvency standards:

> The financial condition of accident and health insurers is highly regulated under Hawai'i statutory law.  Accident and health insurers are required to maintain $450,000 on deposit at all times, which is greater than the $300,000 deposit required of HMOs.  HRS §§ 431:3-205, 432D-8(b). Accident and health insurers incorporated outside the State of Hawai'i (such as WellCare of Arizona and Evercare) are required to maintain additional deposits in an amount not less than $500,000.  <u>Id.</u> § 431:3-209.  In addition, HRS § 431:5-201 provides specific requirements with respect to the assets and liabilities of an insurer.  Accident and health insurers are also required to maintain an "unearned premium reserve on all policies in force."  <u>Id.</u> § 431:5-301(a).  The "unearned premium reserve" means the portion of the gross premiums in force, less authorized reinsurance. <u>Id.</u> § 431:5-301(b).  Moreover, if the commissioner determines that an insurer's unearned premium reserves, however computed, are inadequate, the commissioner may require the insurer to compute such reserves or any part thereof according to such other method or methods as are prescribed in this code.

Id. *88–89.[4]

After reviewing the evidence, the Court denied Plaintiffs' summary judgment motion as to the first requirement because the Court found that there were genuine issues of material fact as to whether WellCare of Arizona meets state solvency standards for accident and health insurers and thus whether it has made an adequate provision against insolvency, which provision is satisfactory to the state, as required by 42 U.S.C. § 1396b(m)(1)(A).  See 12/24/09 Order at *91–*92.[5]

---

[4] Plaintiffs challenge the contention that Hawai'i sufficiently regulates its insurers.  See Pls.' Opp'n at 3 n.1. Specifically, Plaintiffs assert:

> The 'deposits' required by HRS § 431:3-209 are not even maintained in this State, and $500,000 constitutes about 1/6-1/8 of the dollars spent each day in the QExA program.  Even the deposits Intervenors have made, $28.6 million combined, would only last one week at the rate the QExA program spends money, and thus are woefully inadequate . . . .

Id.  However, whether Hawai'i sufficiently regulates its insurers is not relevant to issues that remained to be tried in this case.

[5] In its 12/24/09 Order, the Court observed that there appeared to be two separate issues with regard to the first solvency requirement.  The first issue relates to Mr. Leverty's assertion that the "'Insurance Commissioner, looking at WellCare [of Arizona], should say or should be saying that it doesn't meet the solvency requirements, for the fact that it hasn't--its financial condition has been declining over the last several years, and, in particular, since it started into the Quest program.'"  12/24/09 Order at *90 (internal citation omitted). However, as explained below, this opinion relates to standards Mr. Leverty believes should be considered but are not state solvency standards, and therefore are not relevant to the issue

(continued...)

**B.    The Third Requirement**

The third solvency requirement that must be met to qualify as an MCO is that the organization must assure "that individuals eligible for benefits under [Medicaid] are in no case held liable for debts of the organization in case of the organization's insolvency."  42 U.S.C. § 1396b(m)(1)(A)(ii).

In its 12/24/09 Order, the Court found that the accident and health insurance licenses held by Evercare and WellCare of Arizona apply to their activities under the QExA Contracts.  12/24/09 Order at *109.  As such, they must comply with the applicable statutory solvency standards in carrying out those activities.  Id.  Moreover, § 72.130 of the RFP provides that "[m]embers shall not be liable for the debts of the health plan," and that, "in the event of insolvency of the health plan,

---

[5]/(...continued) of whether WellCare of Arizona is actually in compliance with state solvency standards for accident and health insurers.  The second issue relates to Mr. Leverty's assertion that WellCare of Arizona has failed to file audited financial statements with the State Insurance Commissioner, as required by HRS § 431:3-302.5.  Id.  Mr. Leverty is correct in observing that state solvency standards require that insurers make annual and quarterly filings with the State Insurance Commissioner.  See HRS §§ 431:3-301 & 302.5.  However, as discussed below, Mr. Leverty's assertion appears to relate to WellCare of Arizona's parent company, WellCare Health, and not to WellCare of Arizona.  According to WellCare of Arizona's counsel, WellCare of Arizona's filings "are current and complete and have always been so."  Tr. 73:15-16.  WellCare of Arizona, however, has not yet produced evidence to support this assertion.  In view of these remaining issues, it does not appear to the Court that Mr. Leverty's expert testimony would assist the trier of fact as to any of these remaining issues.

14

members may not be held liable for the covered services provided

to the member, for which the State does not pay the health plan."

Id. at *75.

Although the RFP ensures that providers who participate

in the QExA Program and sign contracts with QExA Contracts will

not hold ABD beneficiaries liable for debts in the event of

insolvency, in its 12/24/09 Order the Court expressed concerns as

to whether non-participating providers could seek to recover from

QExA patients in the event WellCare of Arizona does not make any

payment to the provider due to insolvency.  See 12/24/09 Order at

*112-*14.[6/]

---

[6/] The same concern is not true of Evercare because Evercare
has submitted a form to the Court which includes a provision
stating that the "Provider agrees to look solely to the plan for
payment of amounts due hereunder."  Decl. of David W. Heywood,
filed 12/16/09, Ex. A.  At the hearing on this motion, the Court
inquired as to whether WellCare of Arizona had addressed the
concerns the Court expressed in its 12/24/09 Order with respect
to the third solvency requirement.  Tr. 72:14-15.  In response,
WellCare of Arizona's counsel asserted that "immediately after
the Court's [12/24/09] ruling . . . [t]he forms were amended . .
. to include verbatim the language contained in the Court's
order."  Tr. 72:16-20.  WellCare of Arizona submitted these forms
to the Court following the hearing.  See Decl. of Erhardt
Preitauer, filed 3/9/10, Exs. A & B.  Upon reviewing the forms,
the Court finds these submissions insufficient as they do not
fully address the concerns the Court expressed in its 12/24/09
Order.  Although both forms include the language
"Provider/Physician agrees to look solely to the plan for payment
of amounts due hereunder," the forms include other language that
appears to modify or conflict with this provision.  For instance,
the form WellCare of Arizona sends providers when it approves
requests submitted on Prior Authorization Forms contains two
paragraphs at the bottom of the form.  Id., Ex. A.  The first
paragraph is addressed to "ALL providers" and the second
(continued...)

Accordingly, taking into consideration that the Court had found that there are genuine issues of material fact as to whether WellCare of Arizona is in compliance with state solvency standards, the Court concluded that "there are genuine issues of material fact as to whether WellCare of Arizona has provided sufficient assurances that the ABD beneficiaries are in no case held liable for the its debts in the case of its insolvency." 12/24/09 Order at *115.

### III.     Analysis

The State Defendants assert that Mr. Leverty's expert opinions should be excluded for four reasons: (1) his opinions

---

[6]/(...continued)
paragraph is addressed to "all MEDICARE providers". <u>Id.</u>  The first paragraph, which is the paragraph that includes the provision that the "Provider/Physician agrees to look solely to the plan for payment of amounts due hereunder," appears to pertain only to dual eligibles as the paragraph beings by stating that providers are "not allowed to collect or bill for co-payments, co-insurance or deductibles for Medicare Parts A and B covered services (cost-sharing amounts) if the WellCare member [the physician treats] is a <u>dual-eligible</u> member who is held harmless for such cost sharing amounts by the State medicaid plan . . . ." <u>Id.</u> (emphasis added).  Moreover, notwithstanding the language in the first paragraph, the second paragraph suggests that members may be responsible for copayments as it states: "[m]embers may be responsible for a sum of copays when receiving certain diagnostic services." <u>Id.</u>  In addition, WellCare of Arizona's individual patient letter of agreement indicates that the provider must accept WellCare of Arizona's payment in full "less any applicable co-payments, deductible(s) or patient responsible amounts." <u>Id.</u>, Ex. B.  Accordingly, the Court finds that there continue to be genuine issues of material fact as to whether non-participating providers can seek to recover from QExA members in the event WellCare of Arizona does not make any payment to the provider due to insolvency.

are based on the wrong standards, (2) they fail to "assist the trier of fact in understanding the evidence or determining a fact at issue," (3) they are not relevant and reliable, and (4) "[the] probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, or undue consumption of time." State Defendants' Leverty MIL Mem. at 13-14.[7/]

As a preliminary matter, in opposition Plaintiffs asserts that the admissibility of the Leverty Report is not at issue, but instead argues that the issue before the Court is whether the Leverty Report complies with the disclosure requirements of Fed. R. Civ. R. 26(a)(2)(B). Pls.' Opp'n at 9 ("Review of this motion to exclude an expert based <u>solely</u> on the expert's report must be limited to determining whether the report meets the requirements of Rule 26(a)(2)(B) and whether the proffered witness has expertise within the subject matter of the witness' testimony."). In reply, both the State Defendants and WellCare of Arizona note that the motion to exclude Mr. Leverty's report and expert testimony is based on Fed. R. Evid. 702 and

---

[7/] The original deadline for Plaintiffs' expert reports was October 14, 2009. The State Defendants filed this motion on December 15, 2009. Subsequently, Magistrate Judge Barry M. Kurren issued an amended scheduling order requiring that Plaintiffs' expert witness reports be served by February 15, 2010. Accordingly, Plaintiffs served the State Defendants and the Intervenors with the Leverty Report again on February 15, 2010. However, the Leverty Report served on February 15, 2010, is identical to the report originally served on the State Defendants and Intervenors. Accordingly, the amended scheduling order had no significant impact on this motion.

<u>Daubert</u>, not Fed. R. Civ. P. 26(a)(2)(B).  <u>See</u> State Defs.' Reply at 2 n.3 ("The State Defendants did not raise [Fed. R. Civ. P.] 26 as a basis for exclusion in their Motion."); <u>and</u> WellCare of Arizona Reply at 3-4 (observing that although it reserves the right to challenge the Leverty Report's compliance with Fed. R. Civ. P. 26(a)(2), the motion in limine is based on the alleged substantive flaws of the Leverty Report as they related to Fed. R. Evid. 702 and <u>Daubert</u>).  The Court agrees with the State Defendants and WellCare of Arizona that the State Defendants' Leverty MIL is not based on Fed. R. Civ. P. 26(a)(2)(B), but instead based on the requirement that expert testimony be both relevant and reliable, in addition to assisting the trier of fact.  <u>See</u> State Defs.' Leverty MIL Mem. at 1 ("The State Defendants have moved this Court to exclude any expert testimony by Vernon E. Leverty, and to strike his report, as not admissible pursuant to FRE 702 and as unreliable under <u>Daubert</u>.").  Accordingly, admissibility is at issue, and the Court will now determine whether Mr. Leverty's opinions should be excluded under Fed. R. Evid. 702 and <u>Daubert</u>.

### A.    Eight Standards Proposed by Mr. Leverty

Mr. Leverty's report surmises that anyone reviewing the financial integrity of WellCare of Arizona should have considered eight long established insurance regulation standards.  <u>See</u> Leverty Report at 1-8.  As explained in the Court's 12/24/09

Order, however, with respect to solvency, the issues to be resolved at trial are whether: (1) WellCare of Arizona meets state solvency standards for accident and health insurers, and (2) WellCare of Arizona has provided sufficient assurances that the ABD beneficiaries are in no case held liable for its debts in the case of its insolvency.  <u>See</u> 12/24/09 Order at *91-*115.

Thus, the question that remains with respect to the first issue is whether WellCare of Arizona meets state solvency standards for accident and health insurers, not whether WellCare of Arizona meets the requirements set forth by Mr. Leverty. Although Mr. Leverty is highly qualified on the subject of financial solvency, the first solvency requirement is that an organization must make "adequate provision against the risk of insolvency, <u>which provision is satisfactory to the State</u>."  42 U.S.C. § 1396b(m)(1)(A)(ii) (emphasis added).  In this case, through RFP § 71.800, the State has decided that the first requirement is satisfied if the MCOs warrant that they are of sufficient financial solvency, provide sufficient financial information to the State to establish that it is solvent, and "comply with the solvency standards established by the State Insurance Commissioner for private health maintenance organizations or health plans licensed in the State of Hawaii." 12/24/09 Order at *73.  Thus, to the extent that Mr. Leverty bases his opinions on the eight standards set forth in his

report, these opinions are based on the wrong standards.[8/]  As

the State Defendants put it, "[t]he law is clear that the

solvency of the Intervenors must be satisfactory to the State,

not Mr. Leverty."  State Defs.' Leverty MIL Mem. at 12.

With regard to the second issue to be resolved at

trial, the Court has noted that the specific issue is whether

WellCare of Arizona has sufficient protections in place to ensure

that out-of-network providers will not seek payments from ABD

beneficiaries should WellCare of Arizona become insolvent.  See

id. at 114-15.[9/]  The standards proposed by Mr. Leverty do not

---

[8/] The Court recognizes, however, that an expert's findings
based on the wrong legal standard is not, in and of itself, a
basis to exclude expert testimony under Fed. R. Evid. 702.  See
In re Neal, 2008 WL 6759954 (D. Ariz. Sept. 30, 2008) (declining
to exclude an expert witness's testimony that was allegedly based
on the wrong legal standards because Fed. R. Evid. 702 looks to
whether the testimony is relevant and reliable, and whether it
would assist the trier of fact).  The Court agrees with
Plaintiffs that if Mr. Leverty's standards were relevant and
reliable, the proper manner to address the State Defendants' and
Intervenors' disagreement with Mr. Leverty's standards would be
to call a rebuttal expert or cross-examine Mr. Leverty at trial.
See Pls.' Opp'n at 9 ("[T]he Court must reject the invitation to
step into the role of rebuttal expert or the cross-examining
attorney.")  As discussed above, however, in addition to Mr.
Leverty's opinions being based on the wrong legal standards, the
opinions he sets forth and the standards he suggests are
irrelevant and would not assist the trier of fact in deciding any
of the remaining issues relating to solvency.

[9/] Because the Court concludes that Mr. Leverty's expert
testimony will not assist the trier of fact in the present
matter, the Court declines to address, at this time, whether the
Ninth Circuit's recent decision in Hawaii Coal. for Health v.
Hawaii, No. 08-17343, 2010 U.S. App. LEXIS 3471 (9th Cir. Feb.
19, 2010), impacts the Court's previous interpretation of what
(continued...)

relate to this issue.  In fact, at the hearing on this motion, Plaintiffs conceded that expert testimony would not be helpful in resolving the remaining issues relating to the third solvency requirement.  See 3/8/10 Tr. 74:8-12 (rough draft of transcript) ("Tr.").

Although it might be good practice to consider some of the eight factors in reviewing the financial integrity of the insurer; the Court finds that these factors are not relevant to the remaining issues to be tried, and therefore will not assist the trier of fact pursuant to Fed. R. Evid. 702.[10/]

---

[9/](...continued) assurances are required to satisfy 42 U.S.C. § 1396b(m)(1)(A)(ii).

[10/] In its motion, the State Defendants cite to Fed. R. Evid. 403 to argue that the Leverty Report must be excluded because the probative value is substantially outweighed by the danger of confusion of the issues, waste of time, or misleading the jury. See State Defs.' Leverty MIL Mem. at 12-13.  Similarly, in referring to Fed. R. Evid. 702's requirement that expert testimony assist the trier of fact, WellCare of Arizona argues that "[t]he Leverty Report cannot, under Rule 702, offer any assistance to the jury to understand the evidence or to determine a fact at issue."  See WellCare of Arizona Joinder Mem. at 3.  In opposition, Plaintiffs take issue with these references to a jury because, according to Plaintiffs, this cased will be tried as a bench trial because Plaintiffs are seeking an injunction. See Pls.' Opp'n at 15-16.  Plaintiffs seemingly ignore the fact that they have made a demand for a jury trial.  See St. 2d Am. Compl. Indeed, at the hearing on this motion, Plaintiffs stated that they are not withdrawing their request for a jury trial with respect to their Americans with Disabilities Act ("ADA") and Rehabilitation Act claims.  Tr. 2:8-20.  The extent to which there is a factual overlap between the claims for injunctive relief and Plaintiffs' claims for damages under the ADA and Rehabilitation Act has not yet been determined by the Court.

(continued...)

The Court will now turn to the four major opinions set forth in the Leverty Report to determine whether the opinions are relevant and would assist the trier of fact.

**B.    Heading 1: Ohana had no capital surplus and had zero net worth**

The Court has already held that the first opinion set forth by Mr. Leverty is irrelevant.  In its 12/24/09 Order, the Court observed that:

> Whether Ohana met the first solvency standard is irrelevant.  After Ohana was awarded a QExA Contract, but before the contract was approved by the CMS, in May of 2008, Ohana was merged into WellCare of Arizona, which assumed the contract. Thus, WellCare of Arizona is the entity that should be analyzed in considering the first solvency standard.

12/24/09 Order at *86 (internal citations omitted).  Therefore, the first opinion set forth by Mr. Leverty is excluded because it is irrelevant and would not assist the trier of fact.  See Fed. R. Evid. 704.

**C.    Heading 2: WellCare's financial records demonstrated a lack of useful data for analysis by CMS based on WellCare's failure to file required annual statements,**

---

[10]/(...continued)
Thus, it would be premature to rule on the matter at this point in time.  In any event, although confusion of the issues and danger of unfair prejudice would not be of concern if the solvency claims are to be tried by the bench, the requirement that the expert testimony assist the trier of fact exists irregardless of whether the solvency claims are tried by a jury or the bench.  Because the Court concludes that Mr. Leverty's expert testimony would not assist the trier of fact, the Court need not address the State Defendants' arguments regarding confusion of the issues or danger of unfair prejudice.

**and WellCare of Arizona was not financially viable when it was awarded the QExA Contract**

The second opinion set forth in the Leverty Report opines that the State did not have enough useful information to properly analyze the financial condition of WellCare of Arizona before awarding it the QExA Contract.  See Leverty Report at 12-14.  Further, relying on WellCare of Arizona's financial statements, Mr. Leverty asserts that WellCare of Arizona's fall in total capital and surplus is outside of the range of what is considered "usual" by the NAIC.  Id. at 13.  Based on this, Mr. Leverty concludes that WellCare of Arizona was not financially viable at the time it was awarded the QExA Contract.  Id. 13-14.

As discussed above, Mr. Leverty's opinion is based on what the State should have done, not what the State was required to do.  The first solvency requirement is that an organization must make "adequate provision against the risk of insolvency, which provision is satisfactory to the State."  42 U.S.C. § 1396b(m)(1)(A)(ii).  In this case, the State has decided that this requirement is satisfied if the MCOs provide the State with sufficient information regarding its financial condition, as deemed satisfactory by the State, and that the MCOs comply with the solvency standards established by the State Insurance Commissioner for private health maintenance organizations or health plans licensed in the State of Hawai'i.  See 12/24/09 Order at *91-*92.  Mr. Leverty's second opinion makes no

23

reference to Hawai'i solvency standards (though his fourth opinion does), but instead applies standards promulgated by the National Association of Insurance Commissioners.  Leverty Report at 13.  Moreover, the second opinion does not speak to the third solvency requirement because it does not address the issue of whether WellCare of Arizona, through its contracts, has ensured that its members will not be held liable by out-of-network providers in the case of its insolvency.[11/]

Accordingly, the Court finds that the second opinion should be excluded because it is irrelevant and would not assist the trier of fact.  See Fed. R. Evid. 704.

**D.    Heading 3: Based on recent actions in the state of Florida, WellCare and WellCare of Arizona's management are either incompetent, untrustworthy, dishonest, or lack business competence**

The third opinion presented by Mr. Leverty relates to an investigation of one of WellCare's subsidiaries for Medicaid fraud in the state of Florida.  See Leverty Report at 14-20.  In its order granting the Federal Defendants' motion for summary judgment, the Court acknowledged that there were "allegations of fraud on the part of subsidiaries of WellCare of Arizona's parent company in Florida."  See G. v. Hawaii, Dep't of Human Servs., Civ. Nos. 08-00551 ACK-BMK & 09-00044 ACK-BMK, 2009 U.S. Dist.

---

[11/] As stated above, at the hearing on this motion, Plaintiffs conceded that expert testimony would not be helpful in resolving the remaining issues relating to the third solvency requirement.  Tr. 74:8-12.

LEXIS 119670, at *61 (D. Haw. Dec. 23, 2009) ("12/23/09 Order").
However, the Court observed that "CMS was not required to conduct
an independent investigation on the activities, in another state,
of the other subsidiaries of the parent company of an
organization chosen by the State DHS to perform under a managed
care contract in Hawaii." Id. at *61-*62.  Similarly, whether
there were allegations of fraud on the part of subsidiaries of
WellCare of Arizona's parent company in Florida is not relevant
to the question of whether WellCare of Arizona complies with the
solvency standards established by the State Insurance
Commissioner for private health maintenance organizations or
health plans licensed in the State of Hawai'i.  Moreover, these
allegations are not relevant to the third solvency requirement
either.

In addition, Mr. Leverty's opinion that WellCare of
Arizona's parent company's directors, officers, and "others" in
management in management positions were incompetent,
untrustworthy, dishonest, or lacked business competence, is
equally irrelevant to the remaining issues to be tried and would
not assist the trier of fact.  Leverty Report at 14-20.

As a result, the Court finds that the third opinion
should be excluded because it is irrelevant and would not assist
the trier of fact.  See Fed. R. Evid. 704.

**E.    Heading 4: The failure to have audited financial
     statements and repeated failure to file audited**

**financials shows that WellCare was in a financial crisis**

The final main opinion set forth by Mr. Leverty is that WellCare of Arizona was in a "financial crisis" at the time it was awarded the QExA Contract, as demonstrated by its parent company's failure to file required financial statements.  See Leverty Report at 20-24.  Mr. Leverty asserts that WellCare Health, WellCare of Arizona's parent company, failed to file audited financial statements with the Securities Exchange Commission from the fourth quarter of 2007 until 2009.  Id at 21. In addition, according to Mr. Leverty, as an insurance company WellCare Health is required to file an annual statement with the states for which it is licensed to do business.  Id.  Mr. Leverty further observes that Hawai'i law requires that all authorized insurers file annual statements with both the Hawai'i Division of Insurance as well as the NAIC.  Id. at 25 (citing H.R.S. § 431:3:302-5).

At the hearing on this motion, WellCare of Arizona's counsel represented that WellCare of Arizona's filings "are current and complete and have always been so."  Tr. 73:15-16.  In response, Plaintiffs seemingly acknowledged that WellCare of Arizona has filed the requisite financial statements, but argued that without the filings of the parent company, "it's pretty much meaningless for WellCare of Arizona to file the financial statements without the others."  Tr. 74:16-22.  As the Court

26

stated in its 12/24/09 Order, <u>WellCare of Arizona</u> is the entity that should be analyzed in considering the first solvency requirement.  12/24/09 Order at *86.  Accordingly, Mr. Leverty's observation that WellCare Health has failed to file annual financial statements is irrelevant and would not assist the trier of fact with respect to the either the first or the third solvency requirements.  <u>See</u> Fed. R. Evid. 704.

In addition, as with the other opinions set forth in his report, Mr. Leverty's opinion that WellCare of Arizona is in a financial crisis is not relevant to the issue of whether WellCare of Arizona has made adequate provision against the risk of insolvency that is satisfactory to the State.  Nor does his opinion that WellCare of Arizona is in a financial crisis speak to the third requirement because it does not address the issue of whether WellCare of Arizona, through its contracts, has ensured that its members will not be held liable by out-of-network providers in the case of its insolvency.

As a result, the Court finds that the fourth opinion should be excluded because it is irrelevant and would not assist the trier of fact, and in any event the fact finder does not need an expert opinion to determine the same.  <u>See</u> Fed. R. Evid. 704.

## CONCLUSION

In light of the foregoing, the Court GRANTS the State Defendants' Motion in Limine, and the joinders therein, to exclude the expert testimony and report of retained expert Vernon E. Leverty.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaiʻi, March 19, 2010.



_____
Alan C. Kay
Sr. United States District Judge


G. v. Hawaiʻi, Dep't of Human Servs., Civ. Nos. 08-00551 ACK-BMK & 09-00044 ACK-BMK:  Order Granting the State Defendants' Motion in Limine, and the Joinders Therein, to Exclude Any Expert Testimony by Vernon E. Leverty, and to Strike his Report